Raymond M. KELTNER, Jr., Appellant,

v.

Judith Ann KELTNER, Respondent.

No. 61016.

Supreme Court of Missouri,
En Banc.

Nov. 14, 1979.

Rehearing Denied Dec. 6, 1979.

Keith W. Hazelwood, St. Charles, Eric C. Hensic, Ballwin, for appellant.

Eric F. Tremayne, Clayton, for respondent.

BARDGETT, Chief Justice.

On motion of appellant, Raymond M. Keltner, Jr. (husband), we transferred this case after opinion in the Missouri Court of Appeals, Eastern District. The principal reasons for transfer were (1) whether in this case the maintenance award to the wife was contractual or decretal, and (2) whether *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567 (Mo. banc 1976), is to be given retroactive application so as to apply to an order awarding alimony entered prior to *Stanhope.*

■ The case has been rebriefed and argued in this Court. The Court concludes that (1) the alimony award in this case was decretal and not contractual, (2) *Stanhope* is not retroactive and cannot be used as authority for imprisoning a person for civil contempt for failing to pay an alimony award entered prior to this Court's decision in *Stanhope*, (3) the circuit court's order and judgment of February 2, 1977, adjudicating

that appellant is indebted to respondent for back child support and maintenance (alimony) in the sum of $15,665.46 is affirmed, and (4) that the order and judgment of February 2, 1977, whereby respondent was ordered to pay attorney's fees in the amount of $3,500 and special process service fees in the amount of $100.00, the same being impressed with a lien in favor of respondent's attorney, and for costs of this action is affirmed.[1]

The court of appeals determined that the alimony award was decretal and not contractual and that the court did not err in ordering respondent to pay wife's attorney's fees in the amount of $3,500. This court agrees and will utilize portions of the Missouri Court of Appeals opinion without the use of quotation marks.

As noted supra, the circuit court found appellant indebted to respondent in certain sums of money which the court found were due pursuant to the orders contained in the divorce decree of February 8, 1973, and upon other findings which will be mentioned infra found appellant guilty of contempt of court and sentenced the appellant to be committed to the Department of Welfare of St. Louis County for a period of ninety days. Appellant subsequently posted a supersedeas bond in the sum of $21,292 to insure satisfaction of the money judgment rendered in this case, should the same be affirmed on appeal, and was thereupon released upon his own recognizance.

Issue: Is the alimony award decretal or contractual?

On February 8, 1973, the parties executed a written "Agreement" regarding custody and support of their minor children, division of property, alimony, and other miscellaneous items. The relevant provisions provide:

2. From and after the effective date of this Agreement, the Husband shall, as and for the support and maintenance of each of the aforesaid minor children, pay to the Wife the sum of One Hundred Thirty Five Dollars ($135.00) per child per

---

1. The circuit court found that the procedures under § 452.345(4), RSMo 1978, were not applicable to this case. We agree.

month, for each of the aforesaid minor children. The payments shall be made semi-monthly, by mail, at the home of the Wife, one-half on the tenth and one-half on the twenty-fifth day of each month. 3. From and after the effective date of this Agreement, the Husband shall, as and for *statutory* alimony, pay to the Wife the sum of Three Hundred Seventh (sic) Five Dollars ($375.00) per month. The aforesaid payments shall be made semi-monthly at the home of the Wife, by mail, one-half on the tenth and one-half on the twenty-fifth day of each month. (Emphasis added.) 8. The Husband assumes, contracts and agrees to pay an attorney's fee to the Wife in the aforesaid action in the sum of One Thousand ($1,000.00) Dollars (RMZ), an allowance for which shall be entered as a part of the Decree in said suit, and the Husband shall, in addition, pay the Court costs of said divorce action.

Paragraph One provides for permanent and temporary custody of the minor children, "Subject to the approval of the Court, . . . ." Paragraph Four provides for transfer of title to an automobile. Paragraphs Six and Nine deal with health and life insurance, respectively. Paragraph Seven provides for transfer of the parties' residence to the wife. In Paragraph Ten, husband agrees to furnish a college education for the children. Paragraph Eleven states that the Agreement is not made to procure a divorce and Paragraph Twelve is a mutual release of claims. Paragraph Thirteen provides for husband's transfer of his interest in a certain check payable to the parties. Paragraphs Fourteen through Sixteen pertain to income tax returns. Paragraph Seventeen provides that actions required pursuant to the Agreement be done as soon as practicable after a decree of divorce is entered. Paragraph Eighteen states that the Agreement is contingent upon a decree of divorce being entered in favor of respondent wife or said Agreement is void.

The parties were divorced on February 8, 1973. The wife was granted permanent custody of the five minor children. The husband was granted temporary custody "as per stipulation filed". The wife was awarded $135.00 per month per child as child support, $375.00 per month "as and for alimony", and $1,000.00 as attorney's fees. The decree recited that "Stipulation filed, marked Defendant's exhibit '1'." On August 5, 1976, wife filed a "Motion for Contempt" alleging that her former husband failed to pay in excess of $14,935.00 in alimony payments and the attorney's fees awarded in the decree. An "Amended Motion for Contempt" was filed on October 28, 1976.

In October, 1976, wife collected $2,000.00 by garnishment. On November 10, 1976, she filed another "Amended Motion for Contempt" upon which the case was tried. She alleged that husband was delinquent in child support and alimony in the amount of $18,750.00. Testimony on this motion was heard on January 20 and 26, 1977. On February 2, 1977, the court found that husband failed to pay a total of $15,665.46 alimony and child support and that husband had the ability to make regular payments but intentionally refused to pay. The husband was held in civil contempt. Proceedings were stayed and husband was ordered to pay $7,500.00 to Mrs. Keltner by February 14, 1977, and to appear that date, and to pay $8,165.46 before March 18, 1977. By Court Memorandum, on February 8, 1977, the court added findings to its previous order. The court found that the husband did not come into court with clean hands, that husband's first attorney had advised him that he might be cited for contempt for failure to pay (child) support obligations, that the alimony owed by husband was statutory and not contractual, and that § 452.345(4), RSMo 1975 Supp.[2] was not applicable. On March 3, 1977, husband was sentenced to 90 days' imprisonment.[3]

---

2. All statutory references are to the 1975 Supplement, RSMo, unless otherwise noted.

3. Husband was ordered released on his own recognizance upon the posting of a bond to be

On appeal, husband contends the court erred in citing him for civil contempt because the allowance of $375.00 per month awarded to wife was a contractual obligation rather than statutory alimony.[4] He argues that because the Agreement was meant to be a settlement of all property rights, because the decree recites, "Stipulation filed, marked defendant's Exhibit '1' ", and because references to the Agreement appear in the decree, the allowance was contractual. Thus, contempt was not a proper remedy for failure to pay.[5] We reject Husband's argument.

 In *Nelson v. Nelson*, 516 S.W.2d 574, 577 (Mo.App.1974), the court stated:

Concededly, as the cases universally hold, every contract providing for an award of 'alimony' *referred to* or incorporated in the divorce decree *must be construed upon its own wording* to ascertain the intention of the parties. (Emphasis added.)

Where the parties were represented by counsel in the preparation and execution of their Agreement, the court will give the words used by them their established legal meaning. *Goodwin v. Goodwin*, 277 S.W.2d 850, 852[2] (Mo.App.1955). The intention of the parties determines whether an allowance of maintenance noted in the Agreement settling property rights and other marital matters is contractual or statutory. *Kerby v. Kerby*, 544 S.W.2d 292, 294[1] (Mo. App.1976); *Nelson v. Nelson, supra.*[6]

 Though the Agreement of the parties was a comprehensive document which touched upon their property rights, this fact alone does not force the conclusion that the allowance of alimony was contractual in the present case.[7] Paragraph Three of the parties' Agreement provides that $375.00 be paid to wife "as and for statutory alimony." "Statutory alimony" has an established legal meaning which is understood by lawyers and which is consistently used by the Missouri courts. "If the parties intended the stipulation to accomplish its ordinary purpose as merely an advisory to the court [cases cited], then the award was *for statutory alimony* . . . ." (Emphasis added.) *Nelson v. Nelson, supra.* Statutory alimony is subject to modification while contractual alimony is not. Since both parties here were represented by counsel throughout these proceedings we find that the parties knew the established legal meaning of statutory alimony. And we find that, by the specific use of these words in their Agreement, the parties *intended* to authorize the court to make an award of alimony that would be subject to modification. The parties may settle all *other* property matters by contractual agreement and yet also agree that the court shall retain the power to modify an award of alimony.

Moreover, immediately prior to the divorce decree, the attorneys for the parties filled in a form utilized by the Circuit Court of St. Louis County and appearing in the record in this case, which listed various divorce-related matters. The form re-

used as security for the amount the court finds him in arrears.

4. Husband does not contest the right to punish by imprisonment for failure to pay child support, but claims that he is in arrears for maintenance only.

5. Husband contends that if the obligation to pay alimony is contractual, the wife must pursue her remedies for breach of contract rather than seek a contempt citation.

6. Section 452.325.4(1), RSMo 1978, the effect of which was considered in *In re Marriage of Haggard*, 585 S.W.2d 480 (Mo. banc 1979), was enacted after the divorce decree was entered in this case and is, therefore, not controlling here.

7. This court is cognizant of the cases which hold that an allowance of alimony is contractual when the agreement of the parties specifies that they intend thereby to settle all their property rights. See, e. g. *LaFountain v. LaFountain*, 523 S.W.2d 847 (Mo.App.1975); *Nelson v. Nelson, supra; Goulding v. Goulding*, 497 S.W.2d 842 (Mo.App.1973); *Moran v. Moran*, 286 S.W.2d 389 (Mo.App.1956); *Jenkins v. Jenkins*, 257 S.W.2d 250 (Mo.App.1953); *Davis v. Davis*, 196 S.W.2d 447 (Mo.App.1946); *Bishop v. Bishop*, 151 S.W.2d 553 (Mo.App.1941). These cases are distinguishable from the instant case due to its language in Paragraph Three.

flected that both parties appeared in person with attorney and as to alimony stated: "Three Hundred Seventy Five Dollars per month." This amount was ordered by the judge as indicated by his signature.

Correspondence from appellant's lawyer to appellant within the first half of 1973 and just a few months after entry of the divorce reflected that the attorney advised appellant that the refusal to pay alimony would subject him to garnishment or a writ of sequestration, or some other form of attachment, such as on his bank account or savings account. All of these constitute enforcement methods for decretal alimony but not for a contractual arrangement.

The trial judge had all this evidence before him and found as a fact that the alimony provided for in the decree was statutory in nature and not contractual. The evidence clearly supports this finding. Appellant's contention that the court erred in finding the alimony award to be decretal and not contractual is overruled.

Issue: Is *State ex rel. Stanhope v. Pratt, supra,* to be given retroactive effect so as to afford the basis for a circuit court to imprison a party upon a finding of contempt for failure to comply with an alimony decree which was entered prior to *Stanhope?*

We conclude that it should not be given such retroactive effect. The alimony order which appellant failed to comply with was entered as part of the divorce decree on February 8, 1973, and had not been modified subsequent to this court's decision in *Stanhope.*

From the time that *Coughlin v. Ehlert,* 39 Mo. 285 (1866), was decided until our decision in *Stanhope* on March 8, 1976, the law of Missouri was that the constitutional prohibition against imprisonment for debt prohibited the jailing of a person for contempt where the contempt was premised upon the failure to pay an alimony award. As stated in *Partney v. Partney,* 442 S.W.2d 117, 119 (Mo.App.1969):

> Over one hundred years ago, in *Coughlin v. Ehlert,* 39 Mo. 285, l. c. 287, the Supreme Court of Missouri had before it a defendant who had been adjudged in contempt of court and committed to jail by the Circuit Court which had awarded an alimony judgment against him and which he had not paid. Coughlin sought relief by writ of habeas corpus and the Supreme Court in discharging him from custody said: "An order for the payment of alimony is simply an order for the payment of money. Imprisonment for debt is abolished in this State. We think this was an imprisonment for debt only, and the commitment was without authority of law."

This has remained the law in Missouri since that time. Art. I, Sec. 2, of the Constitution of Missouri bars imprisonment for debt except for the non-payment of fines and penalties imposed by law. The Supreme Court has held the award of alimony to be the same as any other judgment for money again, in *Nelson v. Nelson,* 282 Mo. 412, 221 S.W. 1066, l. c. 1069[7]. Every court of appeals in the state has so held: *Ex parte Kinsolving,* 135 Mo.App. 631, 116 S.W. 1068, St. Louis Court of Appeals; *Harrington v. Harrington,* 233 Mo.App. 390, 121 S.W.2d 291, Kansas City Court of Appeals; *Davis v. Broughton,* 382 S.W.2d 219, Springfield Court of Appeals.

This was recognized in *Stanhope,* 533 S.W.2d at 571.

Generally, this Court has the authority to declare the effect of a decision overruling a former decision to be retroactive or prospective. *Dietz v. Humphreys,* 507 S.W.2d 389, 392 (Mo.1974); *Koebel v. Tieman Coal & Material Co.,* 337 Mo. 561, 570, 85 S.W.2d 519, 524 (1935). In making this determination, the decision should be based on the merits of each individual case. *Linkletter v. Walker,* 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Martin v. Wyrick,* 568 F.2d 583 (8th Cir.), *cert. denied,* 435 U.S. 975, 98 S.Ct. 1623, 56 L.Ed.2d 69 (1978). Generally, it is considered "undesirable to give retroactive effect to overruling decisions, except under the most compelling circumstances." *United States ex rel. Angelet v. Fay,* 333 F.2d 12, 21 (2d Cir. 1964), *aff'd sub nom. Angelet v. Fay,* 381 U.S. 654,

85 S.Ct. 1750, 14 L.Ed.2d 623 (1965). *See Begay v. Graham*, 18 Ariz.App. 336, 501 P.2d 964 (1972). The circumstances in this case compel the conclusion that prospectivity is the only justifiable holding.

As noted supra, the Keltners were divorced and the alimony award was entered February 8, 1973. On that date, *Coughlin v. Ehlert, supra*, was the controlling law in Missouri. That case stood for the proposition that an obligor under a divorce decree could *not* be held in contempt for failure to pay alimony. At the time the Keltner divorce decree was entered, jailing a delinquent spouse for failure to pay alimony was considered to be imprisonment for debt and, therefore, constitutionally prohibited. That state of the law was well known to the entire Missouri Bar, as evidenced by the cases so holding, as well as by the criticism voiced. *See* F. Schoenlaub, *Use of Contempt Powers in the Enforcement of Alimony and Support Decrees*, 23 J.Mo.B. 396 (1967). *See also* C. Smalley, "Enforcement of Decrees and Orders" in *Family Law*, The Missouri Bar § 13.12 (1970).

Attorneys relied on the rule in *Coughlin* in advising clients in divorce proceedings. For this reason alone, it would result in great hardship and injustice for this Court to now apply *Stanhope* retroactively and imprison appellant for failure to pay alimony. *In re Extension of Boundaries*, 574 S.W.2d 357, 364–65 (Mo. banc 1978); *Abernathy v. Sisters of St. Mary's*, 446 S.W.2d 599, 606 (Mo. banc 1969).

One of the most important factors considered by the courts "in deciding whether and to what extent a judicially changed rule of law should be given retroactive effect" is "the degree to which the prior rule may have been justifiably relied on." Annot., 10 A.L.R.3d 1371, 1378 (1966). "It has often been held or recognized that where particular persons have acted in justifiable reliance on a subsequently overruled judicial decision and retroactive application of the overruling decision would defeat their reliance interests, such reliance interests should receive adequate protection, and the overruling decision should be denied retro-

active application in order to prevent such persons from being subject to unfairness or undue hardship." *Id.* at 1386. This is especially true in cases like this involving a prison sentence "where a person has done something which had been treated in a prior judicial decision" as not punishable in this manner. *Id.* The "fact that the decision is subsequently overruled does not warrant the retroactive application of the overruling decision in such a manner as to defeat the person's justifiable reliance interests by punishing him for doing what he had every reason to believe was" protected. *Id.* at 1386–87.

Prior to *Stanhope*, and at the time of this alimony order, lawyers and judges knew that an exhusband could not be imprisoned for failure to pay alimony in Missouri. There is no justification in law or equity to utilize an enforcement method (imprisonment) as to court orders made when imprisonment was not available as a coercive measure at the time the order was entered. The resulting inequities are certainly predictable and readily apparent. *Rudolph v. Wagner Electric Corp.*, 586 F.2d 90 (8th Cir. 1978), *cert. denied*, 441 U.S. 924, 99 S.Ct. 2033, 60 L.Ed.2d 397 (1979). "Private citizens . . . should not be left in doubt about what 'the law' requires, but rather should be able generally to take past declarations as authoritative assurances upon which prediction of future decisions, and arrangement of present affairs, can reasonably be based." T. Currier, *Time and Change in Judge-Made Law: Prospective Overruling*, 51 Va.L.Rev. 201, 236 (1965).

In reaching this conclusion, we do so with the knowledge that when imprisonment is the consequence of failing to obey a certain type order, that fact will influence the parties with respect to their agreement and a court with respect to the order itself. If a party to a divorce proceeding knows that jailing is *not* available as a coercive measure, he may *agree* to a larger court order for alimony. He may accommodate himself to larger alimony payments as long as he does not face prison but only civil relief if he should happen to fail to make a periodic

alimony payment. Because property settlement provisions in divorce decrees are generally consensual in the making, although decretal in effect, one cannot avoid the proposition that if jail had been a known consequence for failure to comply with a consent order, the consent may not have been forthcoming and the order may have been different.

By this we do not mean that one must actually know of all the legal consequences which may attend a breach of agreement or disobedience to a court order in order to be subject to them. But here we are concerned with a peculiar situation wherein the *known* law was that a particular kind of coercive method—imprisonment—was *not even a possibility* at the time the parties agreed to the comprehensive property settlement which included decretal alimony in a certain sum. In these circumstances, it would be wholly unfair and inequitable to imprison a person for failure to make the payments ordered under the earlier alimony award.

For these reasons, the conviction of appellant for contempt and the sentence of ninety days in jail are reversed. In all other respects, the judgment of the circuit court is affirmed.

DONNELLY, RENDLEN, SEILER, WELLIVER and MORGAN, JJ., concur.

HIGGINS, J., not participating because not a member of the Court when cause was submitted.