William A. HUMPHREY,
Petitioner-Appellant,

v.

Charlotte HUMPHREY,
Respondent-Respondent.

No. KCD 30498, WD 30869.

Missouri Court of Appeals,
Western District.

March 3, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 7, 1980.

James H. McLarney, Kansas City, for petitioner-appellant.

Duane J. Fox, Kansas City, for respondent-respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

These consolidated appeals in a divorce case [1] result from post-judgment litigation initiated when the husband, William, moved for a reduction in the amount of alimony awarded in the original divorce decree en-

---

1. The date of the original decree, 1968, precedes enactment of the dissolution of marriage statutes. Authority applicable to this case is therefore that which was current prior to January 1, 1974, when H. B. 315 became effective.

tered in 1968. William appeals from the trial court's order which reduced the payment from $550.00 to $475.00 a month and from the allowance to the wife, Charlotte, of $750.00 attorney fees.

Upon filing his notice of appeal, William also moved to appeal in forma pauperis, contending that he lacked resources to prosecute the appeal. Before a ruling was made on this motion, Charlotte obtained execution on prior unpaid installments of alimony and levied by garnishment on William's social security benefits and other insurance proceeds. William responded by moving to quash the writs of garnishment, claiming the assets to be exempt.

The trial court denied William's application to appeal without costs and overruled his motion to quash the garnishments. Appeals from the orders as to the amount of alimony, the motion to appeal without costs and the claims of exemption have been pursued and perfected by William and they are here consolidated.

For the reasons hereafter stated, we conclude that the trial court improperly entertained and granted relief on the motion to modify the divorce decree for the reason that the obligation to pay alimony was contractual and subject to modification only by mutual consent or, failing voluntary revision, by an independent action on the property settlement agreement.

At the outset, problems regarding the record in this case must be addressed. The transcript on this appeal does not contain the full record of the original divorce proceedings, only the abstract of the judgment entry. From such record it would appear that Charlotte was awarded statutory alimony. In William's motion seeking modification, however, he refers to the parties' property settlement agreement and indicates that it was attached to the decree. Charlotte takes no exception to this assertion and in fact refers to certain terms of the property settlement agreement which she suggests limit or affect future modification of alimony. Despite the continuing assumption by both parties of a subsisting property settlement agreement, a document

of major significance in the case, the transcript contains no record that a property settlement agreement was ever introduced in evidence. The judgment entry abstracted in the transcript also fails to confirm the assumed appendage of the agreement.

Exhibits in the case have been separately filed as provided in Rule 81.15. The folder in which the exhibits were filed bears a stipulation by counsel that the documents contained therein are true and accurate replicas of exhibits "which are a part of the original file in this matter in the Circuit Court of Clay County, Missouri." The contents of this folder include a document marked "Exhibit A" which is undoubtedly the agreement entered into between William and Charlotte in contemplation of their divorce.

"Exhibit A" was never identified or offered in the course of the hearing on or the disposition of the modification motion from which this appeal was lodged. The identity of exhibits offered at the hearing on the divorce petition is undisclosed because a transcript of that proceeding has not been furnished. By reason of the parties' stipulation as to documentary exhibits and their assumption in argument that a property settlement agreement imposes terms limiting modification of Charlotte's alimony, "Exhibit A" cannot be disregarded despite the absence of any transcript reference linking it to the record proper.

Omission from the transcript of the record which would disclose how "Exhibit A" became a part of the original file in the case and the patent necessity to consider the effect of the property settlement agreement on the issues in the case require indulgence of assumptions: (a) The subject property settlement agreement was submitted to the trial court when the divorce case was heard and, (b) the agreement functioned in accordance with the statements it contained. Some doubt necessarily is engendered by the absence in the decree of any reference to the agreement, particularly in view of a provision in the agreement that the terms are to be incorporated in and made a part of the decree. Such an issue is

not, however, significant here where there is no suggestion by the parties that they do not consider themselves bound by the agreement. To the contrary, they have assumed the validity of the agreement and have raised none of the issues inherent in the failure of this record to integrate "Exhibit A" into the fabric of the case or to relate that document to the judgment entry.

This opinion therefore accepts as an initial premise that Charlotte and William in contemplation of their divorce entered into a property settlement agreement exemplified by "Exhibit A," that alimony was decreed in accordance with the agreement and that a copy was exhibited to the court and filed as part of the case record. With the addition of these details, the decree no longer is conclusive as an award of statutory alimony but must be construed in light of the surrounding facts and the intention of the parties.

The property settlement agreement bears the date of July 11, 1968, eight days before the divorce decree was entered. The agreement provides that the husband shall pay the wife "for her support" $750.00 upon the granting of the divorce decree and $550.00 a month thereafter. No mention is made of any requirement that judgment be entered for these amounts. The agreement also requires that upon approval by the court the agreement shall be entered as part of the record in the case and shall be incorporated in the decree. Apparently, the former condition was fulfilled as evidenced by the presence of the agreement in the court file, but the latter condition was not.

The introductory paragraphs of the agreement recite the intention of the parties to settle their respective property rights and to divide their property in contemplation of their divorce. The specific division of such property, allocation of obligations for debts, transfer of insurance, maintenance of insurance on the husband's life for the wife's benefit and payment of attorney fees are all subjects treated in various paragraphs of the agreement. Of particular importance, as will be subsequently examined, are the conditions which the agreement imposes on future support payments to the wife.

In addition to establishing the date, amount and place of payment for the wife's support, the agreement specifies the following conditions: (a) Income derived by the wife from current or future employment shall not be considered as a factor justifying reduction in support payments; (b) Remarriage by the wife terminates the husband's obligation for payment; (c) Review of the support payments shall be made in the event the husband becomes disabled or retires after attaining age sixty-five.

As the primary issue briefed and argued by the parties on this appeal, William contends his evidence of a permanent and totally disabling illness was uncontroverted and persuasive and the trial court erred as a matter of law in failing to absolve him from future support payments. Charlotte, to the contrary, suggests that William's evidence was significantly discredited and the decision should be affirmed for the reason that fact questions should be left to the trial court. Beyond this, however, each party invokes a provision of the property settlement agreement which is contended to limit or affect the court's consideration of the motion to modify.

William offered evidence at the hearing and contended that Charlotte's earnings from self employment should be considered in weighing her needs and in balancing the respective incomes of the parties. Charlotte responds by pointing to the property settlement agreement which precludes consideration of such income. William also resorts to the agreement, contending that his disability was expressly forecast in the agreement as a condition for review of continuing payment for Charlotte's support and he is entitled to have the support terminated.

These contentions bring into focus a pivotal question in the case, one which the parties have failed to confront directly. If the award to Charlotte was of statutory alimony, the terms of the agreement do not control on modification issues. If, to the

contrary, Charlotte's support payments are contractual, the motion to modify is not cognizable as an adjunct to the original divorce case but the parties must resort to a suit on the contract to resolve disputes or to enforce payment.

It has long been held that spouses contemplating divorce may contract between themselves as to the wife's future support and each contract so made must be construed on its own wording. *Nelson v. Nelson*, 516 S.W.2d 574, 577 (Mo.App.1974). The distinction between support by private contract or by judicial decree is significant because each affords a distinct right enforceable differently from the other. *Gunnerson v. Gunnerson*, 379 S.W.2d 861, 865 (Mo.App.1964). If support is awarded as statutory alimony, the contract merges in the judgment, the award may be modified upon proper showing and payment may be enforced by execution on the judgment; if, however, the parties intended that a final property settlement including alimony be accomplished, the award of alimony is a consent decree having the effect of any contract, modification may only be accomplished within the terms of the agreement and enforcement is by suit on the contract. *Nelson v. Nelson, supra*, 516 S.W.2d at 577, 578 and cases there cited.[2]

In *North v. North*, 339 Mo. 1226, 100 S.W.2d 582 (1936), a case frequently cited when property settlement agreements are construed, the court referred to three conditions of the agreement which required the conclusion that the award of alimony was contractual. These were: The contract settled marital property rights including alimony, the support payments awarded the wife were beyond the authority of the court to grant as alimony in a statutory sense, and the contract designated the monthly support to be in lieu of alimony.

The second condition cited in *North* as determinative of contractual rather than decretal alimony, an award in excess of the statutory authority of the court, was alone held to be conclusive in *Nelson v. Nelson, supra*, at 579, where a number of cases to the same effect are cited. The language of the property settlement agreement in *Nelson* as well as the lack of integration in the record of the agreement and the judgment are similar to the situation in the subject case. In *Nelson* the agreement provided for a reduction in the alimony payment upon a sale of the house in which the wife lived. Such was held to be the indicium of a contractual obligation because statutory alimony may not be left to determination by future events. Significantly, the agreement in *Nelson* made no reference, as in *North*, to a payment in lieu of alimony but designated the amount as alimony.[3]

Consideration of the foregoing authorities leads inescapably to the conclusion that payments to Charlotte are of contractual alimony pursuant to the property settlement agreement and are not decretal alimony as would otherwise appear from only the judgment entry.

In common with the cases of *North* and *Nelson* and other authorities there cited, the subject agreement announced that its purpose was to settle marital property rights and, of prime significance, it provided for the wife's support on terms in excess of the court's authority when granting alimony under the statute then in effect, Section 452.070, RSMo 1969. In contrast to normal conditions of increase or decrease in the husband's income and increase or decrease in the wife's needs which justify modification of statutory alimony, the agreement here expressly excluded the

---

2. The decree entered in this case is not affected by the provisions of the subsequently enacted Section 452.325.4(1), RSMo 1978. See *Haggard v. Haggard*, 585 S.W.2d 480 (Mo. banc 1979), for discussion of three categories of maintenance now extant and the attributes of each.

3. We are aware of the recent decision in *Keltner v. Keltner*, 589 S.W.2d 235 (Mo. banc 1979), but conclude that *Keltner* is distinguishable from *Nelson v.Nelson, supra*, and similar cases on the ground that the separation agreement used the words "statutory alimony" which the court construed as being of technical import. The agreement in the subject case describes payment to the wife as "for her support."

wife's income as a factor to be considered and limited review to the event of the husband's retirement or disability. Thus, Charlotte was assured of a level payment sum irrespective of her ability to derive income from other sources with only the contingency of William's retirement or disability as a potential basis for reduction. Also in common with *North* and *Nelson*, the subject agreement settled marital property rights by a division of assets and debts.

Particular mention must be made of the clause in the agreement which provided that payments of support to the wife are to be enforced "in any manner that alimony decrees may be enforced." The intent of this insertion is not immediately apparent. The term "alimony decrees" has no accepted doctrinal significance, as attaches to the words "statutory alimony." An alimony decree may either be an award of decretal alimony or contractual alimony, enforcement of which would be governed by the applicable law. It may well be argued that the clause above quoted infers a distinction between the support payable to Charlotte and that which a wife receives under an "alimony decree" because mention of enforcement methods would be unnecessary were the agreement to contemplate granting Charlotte an "alimony decree."

■ In those details where clauses of the property settlement are not, as noted above, clearly expressive of conditions or terms, the uncertainty does not bear unfavorably on an intention of the parties to settle marital property matters, including alimony, by the agreement. Rather, such provisions which suffer from inadequate legal draftsmanship indicate an effort to resolve to a greater extent the marital property questions. Nothing in the agreement suggests the wife's intention to receive nor the husband's intention to pay decretal alimony. The provisions as to alimony are, to the contrary, expressed in terms evidencing an intention that they survive the decree and control as to any future adjustment.

■ Concluding, as we do, that the wife's support payments ordered by the judgment of July 19, 1968, are contractual, they are not subject to modification in this proceeding ancillary to the divorce case. So, too, any breach of the payment obligation to Charlotte does not subject William's assets to execution under this judgment. Breach of the property settlement agreement by failure to pay support requires, as in any other breach of contract case, an action on the agreement to reduce that claim to judgment. *Vorhof v. Vorhof*, 532 S.W.2d 830 (Mo.App.1975). This conclusion renders unnecessary consideration of issues raised by William as to applicability of exemption statutes in foreign jurisdictions.

Remaining for disposition are the appeals from the orders of the trial court making allowance to Charlotte for attorney fees and refusing William's motion to appeal without costs. As to the latter, the same question was considered in *Nelson v. Nelson, supra,* where the wife had attempted to enforce payment of contractual alimony by execution on the divorce judgment. Although execution was there held to be unavailable for the same reasons as are expressed herein and execution was quashed, the court relied on *Toth v. Toth,* 483 S.W.2d 417, 422 (Mo.App.1972), and held that fees could be appropriately awarded despite failure of the underlying cause.

■ In divorce cases, the allowance of fees and costs turns on the respective abilities of the parties to bear the expense of litigation. Relevant facts are the wife's financial needs and the husband's ability to pay. *Toth v. Toth, supra.* Frequently the evidence will disclose, as here, that both parties have some resources, neither may be considered destitute, but they are ill equipped financially to bear the added burden of attorney fees and court costs. In such matters, the trial court occupies a superior position having before it the parties and proof of their circumstances. Within such evidence, allowance of fees and costs rests in the broad discretion of the trial court and will be disturbed only on abuse.

■ No abuse of the court's discretion appears here, either as to the allowance of fees or as to denial of William's motion

to appeal without costs. Affirmance of the trial court's order allowing attorney fees of $750.00 to Charlotte is, however, premised on the assumption that no application for nor allowance of additional fees will be made to Charlotte on account of this appeal. By reason of the result reached in this case, we also conclude that costs on appeal should be apportioned equally between the parties.

The order modifying the judgment of July 19, 1968, is reversed with instructions to reinstate the original judgment.

The orders overruling motions to quash execution and writs of garnishment to Mutual Benefit Life Insurance Company and the Social Security Administration are reversed with instructions that execution be quashed.

The orders allowing attorney fees to respondent and denying petitioner's motion to appeal in forma pauperis are affirmed.

Costs are assessed equally to the parties.

All concur.

## ON MOTION FOR REHEARING

PER CURIAM.

Respondent's motion for rehearing or transfer asserts that the opinion previously delivered fails to address the issues briefed and argued by the parties, but indulges unsupported factual assumptions resulting in disposition of the case on grounds not submitted to the court for resolution. The nucleus of the problem lies in a property settlement agreement conceded by appellant and respondent to have been executed immediately prior to entry of the divorce decree and, to this date contested by neither as inaccurate, avoided or superseded. Respondent argues that an assumption in the opinion as to exhibition of the agreement to the court concurrently with the uncontested presentation of the cause and entry of the original divorce decree is factually unsound.

The record on this appeal included a transcript of proceedings had on the motion to modify the divorce decree, but no record of the original trial. Only the decree was supplied. The subject property settlement agreement was not, according to this record, introduced in evidence when the modification motion was heard and, yet, exhibits tendered with this appeal upon a joint stipulation of counsel as to authenticity include a copy of the property settlement agreement also stipulated by counsel to be a duplicate of the original contained in the original case file of the Circuit Court in Clay County.

The property settlement agreement and its ultimate implication in disposition of the case was first injected into the post-judgment proceedings of record when mentioned by appellant in his motion for modification. Not only did that reference go unchallenged by respondent but in her brief filed with this court she cited and relied on an advantageous term of the agreement which exempted from consideration as a ground for reduction in alimony any future earnings she acquired from self employment. Appellant likewise pointed to terms of the agreement calling for review of alimony obligations upon his retirement or disability. In short, both parties sought recourse to the property settlement agreement when to their respective advantages but failed to recognize the consequence of the agreement as imposing a contractual obligation underlying the alimony awarded by the original judgment.

As noted in the opinion previously rendered, the parties have by their stipulation, as well as by the pleadings in the trial court and by briefing and argument here, exhibited a significant document which was and is in the original file of the trial court and which, we must conclude, could not have escaped notice of the court whether formally introduced as an exhibit or merely delivered to the court as an agreement approved by the litigants and employed in the manner customary to proceedings before adoption of the Dissolution of Marriage Act. Respondent's assertion in suggestions supporting her motion for rehearing that the document first appeared after the modification motion was heard and reached the trial court file as an appendage to appellant's brief is totally dehors the record and

is inconsistent with the coincidence in the date of the agreement vis-a-vis the date of the original decree, the conformity of the decree to the amount of alimony specified and the continued reliance by the parties on the agreement as applicable to alimony questions.

This court accepts the record which the parties themselves determine is necessary to resolve the points of error asserted. If, as here, that record introduces a factor bearing upon or dispositive of a point presented in the appeal, it comes too late for a party to complain after opinion that the decision turns on a principle not briefed or that some additional record would cast the problem in a different light.

The motion for rehearing is overruled and the motion for transfer is denied.