Ex parte Samuel J. GIANGRECO, Petitioner,

v.

Susan STANTON, Director of Corrections, Respondent.

No. 33471.

Missouri Court of Appeals, Western District.

June 23, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 3, 1982.

**750**

F. Coulter deVries, Kansas City, for petitioner.

Sherrill L. Rosen, Legal Aid of West. Mo., Stephen F. Volek, Assoc. County Counselor, Kansas City, for respondent.

Before SOMERVILLE, C. J., Presiding, and SHANGLER, PRITCHARD, CLARK, KENNEDY, TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This is an original proceeding in habeas corpus. The petitioner made application for the writ after being committed to the Jackson County Jail under an Order of Civil Contempt to pay maintenance pursuant to modification of a divorce decree. This court issued a writ pending a hearing.

WRIT QUASHED.

The primary issue before the court is whether or not petitioner's willful refusal to pay his maintenance obligation pursuant to a divorce decree entered into in 1972 but modified after the decision in *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567, 575 (Mo. banc 1976), subjects him to imprisonment.

Petitioner and his first wife were divorced on September 26, 1972. The amended judgment ordered petitioner to pay $400.00 per month maintenance. At that time, imprisonment for nonpayment of that obligation was still considered violative of the Missouri Constitution's prohibition against imprisonment for debt. *Coughlin v. Ehlert*, 39 Mo. 285 (1866). On June 1, 1976,[1] petitioner and his former wife entered into a

Stipulation reducing his maintenance obligation to $300.00 per month. The circuit court approved this modification on June 25, 1976. In May, 1981, petitioner filed a motion to modify the 1976 judgment to terminate his obligation to pay maintenance. The trial court denied his motion and, after a contempt motion by the former wife, found that petitioner had willfully and intentionally refused to make payment on the 1976 judgment. After hearing, it was determined that petitioner had made only partial payments in 1980 and then simply stopped making payments completely, although he was financially able to pay (which he does not contest here). The court found him in contempt and ordered him to satisfy the arrearage or serve 30 days in jail. After surrendering himself, petitioner applied for a writ of habeas corpus, and this court ordered him discharged on the ground that a commitment for a fixed term was unauthorized for civil contempt. *State ex rel. Giangreco v. Stanton*, WD 33236 (October 23, 1981).

Thereafter, the former wife made further application for contempt and, after hearing, the circuit court found petitioner in civil contempt for willfully and intentionally disobeying the 1976 court order for maintenance payments. Petitioner was ordered committed to the Jackson County Jail until purged by payment of $2,875.00, and after surrender on January 11, 1982, applied for the present writ, which was issued by this court that same day.

The Dissolution of Marriage Act became effective January 1, 1974. In § 452.345, RSMo 1978,[2] the legislature provided for contempt proceedings to be initiated by the prosecutor with the consent of the obligee for the obligor's failure to pay maintenance or support. Section 452.415(3) states that the new statute on dissolution, including § 452.345, applies to all proceedings for the modification of judgments or orders entered before January 1, 1974.

---

1. The opinion in *Stanhope* was handed down on March 8, 1976.

2. All statutory references are to RSMo 1978.

The proceeding in *Stanhope* was pursuant to § 452.345. In *Keltner v. Keltner*, 589 S.W.2d 235 (Mo. banc 1979), the supreme court held that the *Stanhope* decision would not be given retroactive effect. In *Keltner*, the parties were divorced in 1973, at which time *Coughlin* was controlling. The civil contempt proceedings were brought against the obligor in 1977. At page 240–241 of the *Keltner* decision, the court concludes that the retroactive application of *Stanhope* would be unfair and inequitable to those who had relied on the prior rule of law under which imprisonment for nonpayment of maintenance was not even a possibility. To do otherwise would defeat the person's justifiable reliance interests by punishing him for doing what he had reason to believe could not subject him to imprisonment. It is on the basis of *Keltner* that petitioner primarily relies for the proposition that he cannot be jailed for contempt. Petitioner maintains that the 1972 divorce controls, it being prior to *Stanhope*, and that his justifiable reliance at that time was that he could not be sent to jail.

In quashing this writ, the court is mindful of the rationale of *Keltner* to avoid imprisonment when such would violate an obligor's justifiable belief that he would not be so punished. However, the state of law at the time of modification here was such that *Stanhope* allowed imprisonment for contempt under § 452.345. Moreover, § 452.315(3), also in effect at the time of the modification, provided that § 452.345 applies to modification orders of dissolution decrees effected prior to 1974. Thus, the only question is if petitioner had a justifiable reliance in June of 1976 that a modification order would be treated differently than the original decree under § 452.345.

■ Petitioner argues that the 1976 modification was merely an "extension" of the original decree and did not change his reliance interests. Petitioner's argument is contrary to the Missouri law regarding modifications of decree which holds that a modification is not a mere adjunct to the original proceeding but adjudicates new rights based upon new evidence resulting in a new judgment. *Hayes v. Hayes*, 363 Mo. 583, 252 S.W.2d 323, 328 (1952) (This continues to be the effect of a modification, *Nilges v. Nilges*, 610 S.W.2d 58, 62 (Mo.App. 1980)).

■ It is held that a judgment modifying a maintenance decree may, after *Stanhope*, subject an obligor who has willfully refused to follow that judgment to imprisonment for civil contempt. This holding is bolstered by the language in *Keltner* that: "the alimony order which appellant failed to comply with was entered as part of the divorce decree on February 8, 1973 *and had not been modified* subsequent to this court's decision in *Stanhope*." 589 S.W.2d at 239 (emphasis added).

■ Finally, in oral argument, petitioner stressed that the trial court's finding of contempt under its inherent power of civil contempt was improper, and contends that the only means of enforcement for refusal to pay a maintenance obligation is pursuant to § 452.345, *i.e.* a proceeding brought by the prosecuting attorney with the consent of the obligee.

Although *Stanhope* involved a proceeding under § 452.345, a contemporaneous decision by the court also ruled that trial courts have the inherent authority to adjudicate civil contempt proceedings for failure to make support payments. *State ex rel. McCurley v. Hanna*, 535 S.W.2d 107, 108[1] (Mo. banc 1976). *See also Ex parte Ryan*, 607 S.W.2d 888 (Mo.App.1980). Also, in *Teefey v. Teefey*, 533 S.W.2d 563 (Mo. banc 1976), the court notes that civil contempt, for the protection of a party who is benefited by an order, is a means to coerce compliance with that order, and that contempt proceedings under 452.345 are classified as civil contempt.

The writ is quashed and petitioner is remanded to the custody of the Director of Corrections of Jackson County pursuant to the circuit court's judgment of civil con-

tempt until such time as he may purge himself by payment of $2,875.00.

SOMERVILLE, C. J., and SHANGLER, PRITCHARD and TURNAGE, JJ., concur.

CLARK, J., concurs in a separate opinion.

KENNEDY, J., dissents.

CLARK, Judge, concurring.

I concur in the result reached by the majority opinion and I likewise agree that modification of a decree for support in a marriage dissolution case accomplished after the decision in *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567 (Mo. banc 1976) subjects the obligor, who thereafter willfully defaults, to the potential penalties incident to a finding of civil contempt. I question, however, the sanction given trial courts to exercise inherent contempt powers to coerce payments of support in marriage dissolution cases outside the procedures defined in § 452.345.[1]

It is to be assumed that the legislature and the authors of the model "no fault" laws were aware of that which members of the bar practicing in the field know intimately—that the former partners to a dissolved marriage seldom agree upon anything, least of all the record of credits and allowances against accrued support obligations. Moreover, the attraction to private counsel to enter upon representation of parties in post-dissolution collection proceedings is minimal if not non-existent.

To remedy these latent deficiencies, the legislature provided in § 452.345, first, that the payment record will be that of the circuit clerk because § 452.345 proceedings may not be followed unless the obligee has first arranged for payments to be made to that official. Second, the statute requires the prosecuting attorney to assist the obligee and the court by initiating contempt proceedings and following the case to final enforcement. The statute thus operates to minimize the trial court's time in deciding disputes over payment accounting and provides services of counsel to implement an orderly processing of cases.

Proceedings outside § 452.345 addressed to the inherent power of the trial court and presented by a party to a dissolution case seeking aid in collection of support will frequently involve pro se appearance and will inevitably embroil the trial courts in time consuming wrangles over charges and credits without the benefit of orderly pleadings and records. Judge Bardgett in his concurrence in *State ex rel. McCurley v. Hanna*, 535 S.W.2d 107, 109 (Mo. banc 1976) notes the efficacy of § 452.345 and observes that he sees no cause to go beyond the procedure which the legislature has provided by statute.

I concur in result here because this court is bound by the holding in *State ex rel. McCurley v. Hanna, supra*, despite the deficiencies and future problems which that result entails.

---

1. All statutory references are to RSMo 1978.