Freida J. COYLE, Petitioner–Respondent,

v.

Jesse A. COYLE, Respondent–Appellant.

No. 73192.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 23, 1998.

Kruse, Reinker & Hamilton, L.L.C., Robert N. Hamilton, St. Louis, for Appellant.

Dorothy J. Harper, St. Louis, for Respondent.

KAROHL, Judge.

Appellant, Jesse A.Coyle (Father), was jailed pursuant to a judgment of contempt entered on May 15, 1997, for failure to pay child support as ordered in a dissolution decree granted on July 8, 1974. The decree dissolved the marriage between Father and Frieda J. Coyle (Mother). We reverse in part and affirm as modified, in part.

The marriage was dissolved on July 8, 1974. The trial court awarded Mother primary custody of two children born of the marriage, April and Aaron. It ordered Father to pay child support in the sum of $70 per month, per child. The child support order was never modified. Father made sporadic child support payments. On May 17, 1989, he plead guilty to criminal non-support. The Court ordered Father to make all pay-

ments under the original decree, but he continued to pay infrequently.

On May 24, 1996, Mother filed motions for contempt and to revive judgment. Father was served and retained counsel. On September 26, 1996, Father consented to the revival of judgment and to a finding of contempt. Father agreed he owed Mother $37,500 for unpaid child support. This agreement was incorporated in a consent judgment which also provided that if the amount of $37,500 was not paid by December 1, 1996, the court would "enter its Order of Commitment and Warrant of Commitment and [Father] will be incarcerated until such time as he has purged himself of contempt."

Father paid Mother $10,000 on December 6, 1996. The parties agreed that the balance Father owed Mother, plus an additional $5,000, would be paid by January 6, 1997. Father breached his agreement. A second motion of contempt was filed on March 27, 1997. A show cause order and the motion for contempt were served on Father in Jackson County, Missouri, on April 21, 1997. The motion was set for hearing and the order was returnable on May 15, 1997. An amended motion for contempt was mailed to "all attorneys of record, and or all unrepresented parties" on March 28, 1997. Mother filed a second amended motion on May 14, 1997. However, the proof of service on the second amended motion asserts service on April 18, 1997, by mailing a copy to "all attorneys of record and or unrepresented parties." Father's attorney who defended him during his first contempt proceeding, withdrew on April 28, 1997. The only change in the amended motion from the original motion was the amount owed by Father. On May 15, 1997, the hearing date on the March 27, 1997 order that had been served on Father, Mother appeared with counsel. Father failed to appear. The Court heard the amended motion for contempt filed on May 14, 1997. Mother never gave Father notice that she would proceed on the amended motion. The Court entered a judgment of contempt, and issued a warrant and commitment order against Father. He was arrested and jailed on June 2, 1997. Nine days later, on June 11, 1997,

he was released pursuant to an order that Father pay an initial $1,500 to Mother and monthly payments then of $800 thereafter, until the sum of $53,844.33 was paid in full. Father appealed, raising two points of error, each of which will be addressed in turn.

■ Father first argues the court erred by incarcerating him under the contempt order. He contends a debtor cannot be incarcerated for non-payment of a child support award pursuant to a judgment entered before March 8, 1976, the date the Missouri Supreme Court decided *State Ex Rel. Stanhope v. Pratt,* 533 S.W.2d 567 (Mo. banc 1976). It there dissolved a provisional rule in prohibition that protected a relator-debtor from imprisonment for nonpayment of alimony. It held such incarceration was not imprisonment for debt. *Stanhope* expressly reversed *Coughlin v. Ehlert,* 39 Mo. 285 (1866). In *Coughlin* the Missouri Supreme Court had held that "an order for payment of alimony is simply an order for the payment of money. Imprisonment for debt is abolished in this state. We think this was an imprisonment for debt only, and the commitment was without authority of law." *Id.* This holding became the minority view in this country. In response, the Missouri legislature in 1974 enacted section 452.345, which authorized contempt proceedings to be used to enforce the payment of maintenance and child support. The statute, in light of *Coughlin,* was subject to constitutional challenge. That challenge was made and decided in *Stanhope.*

*Stanhope* involved the non-payment of alimony. The holding was extended to include the non-payment of child support. *Teefey v. Teefey,* 533 S.W.2d 563 (Mo. banc 1976). Thereafter, the Missouri Supreme Court decided *Stanhope* could be not retroactively applied. *Keltner v. Keltner,* 589 S.W.2d 235 (Mo. banc 1979). The Missouri Supreme Court reasoned:

> [p]rior to *Stanhope,* and at the time of [the alimony order at issue in *Keltner* ], lawyers and judges knew that an exhusband could not be imprisoned for failure to pay alimony in Missouri. There is no justification in law or equity to utilize an enforcement method (imprisonment) as to court orders made when imprisonment was

not available as a coercive measure at the time the order was entered. The resulting inequities are certainly predictable and readily apparent.

*Keltner,* 589 S.W.2d at 240.

The *Keltner* decision also applies to child support obligations. *State ex rel. Leong v. Smith,* 603 S.W.2d 74, 75 (Mo.App.1980).

Section 452.345 of the Missouri Dissolution of Marriage Act was effective as of January 1, 1974. The dissolution decree in the present case was granted on July 8, 1974. *Stanhope* was decided on March 8, 1976. Mother contends that since the dissolution decree was entered after the effective date of section 452.345, the decree is enforceable by a motion for contempt. *Keltner* will not permit this result. *Keltner* specifically held that:

> [f]rom the time that *Coughlin* ... was decided until our decision in *Stanhope* on March 8, 1976, the law of Missouri was that the constitutional prohibition against imprisonment for debt prohibited the jailing of a person for contempt where the contempt was premised upon the failure to pay an alimony award.

*Keltner,* 589 S.W.2d at 239.

"*Keltner* establishes that the date an order for support was entered determines whether *Stanhope* will control in a given case." *State ex rel. Leong v. Smith,* 603 S.W.2d 74, 75 (Mo.App.1980). Thus, the issue is whether the dissolution decree was entered before or after *Stanhope,* not before or after the enactment of section 452.345.

*Keltner* and subsequent cases have carved out an exception to *Stanhope,* allowing for incarceration for divorce or dissolution decrees ordered prior to 1976, if modified after *Stanhope. Keltner,* 589 S.W.2d at 239; *Giangreco v. Stanton,* 637 S.W.2d 749, 751 (Mo.App.1982). This exception has been recognized because a modification of a decree is not "a mere adjunct to the original [divorce or dissolution] proceeding, but adjudicate[s] new rights based upon new evidence resulting in a new judgment." *Giangreco,* 637 S.W.2d at 751. While *Giangreco,* like *Keltner,* dealt with the non-payment of maintenance, it has been applied to child support

obligations. *Spangler v. Spangler,* 831 S.W.2d 256, 261 (Mo.App. W.D.1992); *Leong,* 603 S.W.2d at 75. Mother contends that *Spangler* allowed for exceptions to *Stanhope* other than modifications of the dissolution decree. She argues that it is not only a modification of a decree which creates a *Stanhope* exception, but any new judgment. Her position is contrary to the holdings in *Spangler, Giangreco,* and *Keltner,* all of which require a modification order for an exception to *Stanhope* to apply. *Spangler,* 831 S.W.2d at 256; *Giangreco,* 637 S.W.2d at 749; *Keltner,* 589 S.W.2d at 235. The 1974 dissolution decree has never been modified. Thus, the court erred in enforcing the judgment for contempt by incarcerating Father.

▆▆▆ Father also argues that the court erred in finding him in contempt and abused its discretion by allowing Mother to proceed on her amended motion, since he did not have notice that Mother was going to proceed on the amended complaint. Persons charged with indirect contempt (contempt committed outside the presence of the court) are entitled to notice and reasonable time to prepare a defense against the contempt charge. Section 476.130 RSMo (1986); *Jafarian–Kerman v. Jafarian–Kerman,* 424 S.W.2d 333, 341 (Mo.App.1967). "Reasonable notice [is] one which will fairly and fully enable the party cited to know the specific acts he is charged with and be thereby enabled to prepare his defense." *Id.*

▆▆▆ The original motion of contempt was filed on March 27, 1997. A show cause order and a copy of the motion for contempt was served on Father on April 21, 1997. The order was set for May 15, 1997. An amended motion for contempt was mailed to "attorneys of record and or unrepresented parties " on March 28, 1997. This form of certification is vague and indefinite. It is not clear that Father was represented by counsel in the 1997 contempt proceeding. Thus, the court cannot determine who received the amended motions, if anyone. Mother filed a second amended motion for contempt on May 14, 1997. The only change in the amended motions was to increase the amount of unpaid support. With respect to proper notice, "the issue is not how the notice is denom-

inated, but if it contains the information sufficient to notify the contemnor of the contempt charged at the hearing." *Happy v. Happy*, 941 S.W.2d 539, 543 (Mo.App. W.D.1997). The original motion contained all of the allegations necessary to find Father guilty of civil contempt. The finding of contempt, to the extent of the unpaid child support alleged in the March 27, 1997 motion and proven at the May 15, 1997 hearing, is supported by notice. Any sums that were not paid thereafter, if any, may be the subject of future proceedings.

We reverse the order of commitment to jail for contempt. In all other respects the judgment is affirmed as modified by limiting the finding of sums owed to the proven allegations in the original motion for contempt.

AHRENS, P.J., and CRANDALL, J., concur.