Wayne O. HOPKINS, Plaintiff-Appellant,

v.

Juanita A. HOPKINS, Defendant-Respondent.

No. 42607.

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 27, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 16, 1981.

Robert D. Benjamin, Clayton, for plaintiff-appellant.

W. W. Sleater, Clayton, for defendant-respondent.

GUNN, Judge.

The appellant-husband raises five points of alleged trial court error in granting the respondent-wife's contempt of court motion: (1) insufficient findings of fact to support the contempt order; (2) terms of judgment insufficiently certain to render it enforceable; (3) error in ordering the husband to assign his social security and pension benefits to the wife; (4) the husband's motion to dismiss the contempt proceeding should have been granted; (5) the statute under which the wife was granted maintenance was constitutionally flawed. We affirm.

The domestic relations skirmishing between these parties has been long, bitter and constant. They were divorced in 1969 with a court order for the husband to pay maintenance to the wife of $400.00 per month. In 1978, the trial court reduced the monthly maintenance obligation to $350.00. This modification was affirmed in *Hopkins v. Hopkins*, 591 S.W.2d 716 (Mo.App.1979).

Subsequently, the wife filed a motion to hold the husband in contempt of court, asserting that no maintenance payments had been made since April, 1978.[1] In response, the husband asserted the wife's alleged unclean hands as an affirmative defense and filed a motion to dismiss the contempt proceedings. The trial court denied the motion to dismiss and held a hearing on the contempt motion at which the parties stipulated that the husband had made no maintenance payments since April, 1978 and that his financial status was substantially unchanged since August, 1978, the date of hearing on the motion to modify the original decree.

The wife's contempt motion was granted and the husband ordered to purge himself by assigning to the wife all his social security and union pension benefits until the amount due, with interest, was fully paid, after which assignment of the social security and pension payments was to be reduced to conform to the monthly maintenance award.

 The first point of appeal alleges an insufficiency of the contempt order by reason of the trial court's failure to ascertain that the husband was able to pay maintenance and had intentionally and contumaciously refused to do so. But this argument thrusts a false issue into the proceedings—whether the trial court is obligated to search out and determine if the husband may be able effectively to assert the affirmative defense of inability to pay. When the wife proves the husband's obligation to pay maintenance in a specified amount and his failure to make payments, she has established a prima facie case for contempt. The husband then has the burden of proving his inability to make payments and that he does not intentionally and contumaciously bring about his inability. When the wife establishes a prima facie case for contempt and the husband makes no attempt to prove the affirmative defense of inability to pay, it is not error for the trial court to hold him in contempt. *Blair v. Blair*, 600 S.W.2d 143, 145 (Mo.App. 1980); *In Re Marriage of Vanet*, 544 S.W.2d 236, 245–46 (Mo.App.1976). Of course, prior to ordering imprisonment for failure to pay maintenance the trial court should convince itself of the alleged contemnor's ability to pay or that he intentionally or contumaciously placed himself in the position of being unable to pay. *Teefey v. Teefey*, 533 S.W.2d 563, 566–67 (Mo. banc 1976); *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567, 575 (Mo. banc 1976); *Thummel v. Thummel*, 609 S.W.2d 175, 183 (Mo.App.1980).

 In this case by evidence of the maintenance order and the husband's admission of having failed to make his required payments, the wife established prima facie contempt, placing the burden on the husband

---

1. The wife cited as additional instances of contempt the husband's failure to maintain a life insurance policy and reimburse her for premiums she had paid on the policy. The husband responded that the provisions of the divorce decree concerning life insurance premiums were contractual and not enforceable as being ancillary to the divorce proceeding. *Hopkins v. Hopkins*, 591 S.W.2d at 720–21. This issue was not addressed by the trial court nor raised on appeal.

to prove his inability to pay. The husband made no effort to carry his burden. Hence, the trial court could reasonably assume the husband's ability to pay the award in view of the evidence that his financial status remained unchanged from the time the maintenance obligation was finally set. *Gross v. Gross*, 557 S.W.2d 448, 454–55 (Mo. App.1977).

The husband next contends that the judgment holding him in contempt was so uncertain as to be unenforceable and that the trial court exceeded its authority in issuing a contempt order that applies to future maintenance payments.

■ A judgment for money must specify with certainty the amount for which it is rendered, and an indefinite judgment that requires some external proof or another hearing for execution is void and unenforceable. *In re Marriage of Wofford*, 589 S.W.2d 323, 327 (Mo.App.1979); *Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 273 (Mo.App.1979). But if the judgment does not state the sum for which it is rendered, it is enforceable nevertheless if the amount is ascertainable from the record. *Meyer v. Meyer*, 599 S.W.2d 6, 7 (Mo.App.1980).

■ The challenged judgment ordered the husband to assign to the wife his social security and union pension benefits "until such time as all alimony and maintenance plus interest has been paid in full and is current." The record reveals that the husband was in arrears $200 for April, 1978, $400 per month for May to August 10, 1978, and $350 per month thereafter. The amount for which this judgment was rendered is specific. Its certainty becomes even more apparent when it is contrasted with judgments deemed unenforceable for lack of specificity. *See, e.g., Pettigrew v. Pettigrew*, 619 S.W.2d 364, 365 (Mo.App. 1981) (providing for increased child support if child should lose job and remains full time student); *Meyer v. Meyer*, 616 S.W.2d 879, 880 (Mo.App.1981) (no dollar amount specified for educational and medical expense); *Meyer v. Meyer*, 599 S.W.2d at 7 (husband to pay all medical, dental, and "necessary" educational costs for the minor

children); *Sunderwirth v. Williams*, 553 S.W.2d 889, 894 (Mo.App.1977) (husband to pay $225.00 each month for each child "as may be now or in the future may attend any accredited college or university, for the educational support of said child, while attending college").

The husband complains further that the contempt order improperly applies to future maintenance payments, reducing the assignment of his social security and union pension benefits "to the amount currently due" upon payment in full of the arrearage. He asserts that contempt is an extreme remedy, to be used sparingly, implying that a contempt order may not be necessary to enforce his prospective obligations.

■ Missouri statutes permit a court to order the person obligated to pay maintenance to assign part of his income to the person entitled to receive the payments. The assignment is binding on the payor of the funds, who must withhold the sum specified and direct payment to the person named in the assignment order. § 452.350, RSMo Supp.1975. This is an exception to § 432.030, RSMo 1969, which generally prohibits the assignment of future wages. *Brinley v. Karnes*, 595 S.W.2d 465, 467 (Mo. App.1980). The trial court's prospective assignment from the husband's income of the "amount currently due" upon full payment of the sum in arrears constituted a modification of its previous modification order directing the husband to pay the wife maintenance of $350 per month. The trial court exercised its sound discretion in ordering assignment of the husband's future income, and the order is not rendered improper by its inclusion in a contempt case.

The husband's third allegation of trial court error concerns its order assigning his union pension and social security payments, both of which he argues are nonassignable as a matter of law.

■ The husband relies on 42 U.S.C. § 407, which forbids the transfer or assignment of the right of any person to future payment of social security benefits. The husband fails, however, to cite 42 U.S.C.

§ 659(a), which amends prior law so that as of January 1, 1975 "moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States ... to any individual ... shall be subject ... to legal process brought for the enforcement, against such individual of his legal obligations to ... make alimony payments." This addition to the Social Security Act reflects Congressional concern regarding recipients of federal benefits who evade support obligations, forcing children and divorced spouses to seek public welfare. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 576, 99 S.Ct. 802, 805–06, 59 L.Ed.2d 1, 7–8 (1979). It is consistent with Missouri law providing that *all* property and wages of an individual may be subject to attachment or execution upon an order issued to enforce a maintenance decree. § 452.140, RSMo 1978. Clearly, the trial court did not err in ordering assignment of the husband's social security benefits to enforce its maintenance decree.

■ The husband's protestations that his union pension plan agreement and federal law prohibit assignment of his pension payments are similarly destitute of merit. The Employee Retirement Income Security Program (ERISA) dictates that "(e)ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated" [29 U.S.C. § 1056(d)(1)] and that ERISA supersedes all state law relating to employee benefit plans [29 U.S.C. § 1144(a)].[2] The husband's pension plan agreement—which was not part of the trial court or appellate record and was improperly first introduced in the husband's brief to this court—forbids assignment of pension payments.

■ However, pension plan bars against assignment of pension payments do not prevent their assignment or garnishment to secure payment of maintenance. *Taylor v. Taylor*, 474 S.W.2d 859, 860–61 (Mo.App. 1971); *Geiwitz v. Geiwitz*, 473 S.W.2d 781, 786 (Mo.App.1971). Further, though Congress intended in its enactment of ERISA to protect employees and their dependents from claims of outside creditors, family support and maintenance claims are excepted from ERISA's anti-assignment or alienation clause. *American Telephone & Telegraph Co. v. Merry*, 592 F.2d 118, 121 (2d Cir. 1979); *Cartledge v. Miller*, 457 F.Supp. 1146, 1156–57 (S.D.N.Y.1978); *Electrical Workers Local No. 1 Credit Union v. IBEW–NECA Holiday Trust Fund*, 583 S.W.2d 154, 157–58 n.2 (Mo.banc 1979). With this exception included, ERISA is congruent with Missouri law subjecting all property and income to attachment for payment of maintenance (§ 452.140, *supra*), so pre-emption by ERISA results in no conflict in this regard. The trial court properly ordered assignment of the husband's pension payments to the wife to enforce his maintenance obligations.[3]

The husband next contends that the trial court erred in overruling his motion to dismiss the wife's motion for contempt. He argues that the contempt motion gave him inadequate notice of the acts of contempt with which he was charged and failed to aver sufficient facts to raise the issue of contempt.

■ This matter is raised for the first time on appeal and is therefore, not properly before us. *Van Kirk v. Board of Police Commissioners*, 586 S.W.2d 350, 354 (Mo.banc 1979). Nevertheless, we note the

---

**2.** *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), cited by the husband, concerning pre-emption of ERISA's nonforfeiture provisions when in conflict with state pension benefit laws and relating to whether pension benefits may be offset by workers' compensation awards, is not pertinent to this case.

**3.** This situation is dissimilar from that in *Kuchta v. Kuchta*, No. 62439 (Mo. banc September 8, 1981), holding that nonmatured, contingent

pension rights do not constitute marital property divisible under § 452.230, RSMo 1978. Alimony obligations are distinct from the equitable distribution of property between spouses upon divorce. *McCarty v. McCarty*, —— U.S. ——, ——, 101 S.Ct. 2728, 2740, 69 L.Ed.2d 589, 604 (1981). Also see *In re Marriage of Weaver*, 606 S.W.2d 243, 244 (Mo. App.1980) (approving award of military pension as marital property.)

lack of merit in defendant's contentions. It is true that a person charged with indirect contempt is entitled to reasonable notice of the charges against him. *Penney v. White*, 594 S.W.2d 632, 636 n.1 (Mo.App.1980); *Ramsey v. Grayland*, 567 S.W.2d 682, 686 (Mo.App.1978). But the wife's motion provided the husband with adequate notice and made a prima facie case of contempt by reciting that he had an obligation to pay maintenance and had failed or refused to pay. *Blair v. Blair*, 600 S.W.2d at 145.

Finally, the husband challenges the trial court's jurisdiction to enforce the maintenance decree because it was granted under a statute that discriminated unconstitutionally in favor of women.

 Defendant raises this claim too belatedly. Constitutional issues must be raised at the first available opportunity. *Hanch v. K.F.C. National Management Corp.*, 615 S.W.2d 28, 33 (Mo.banc 1981). Consideration of an earlier constitutional attack on § 452.130, RSMo 1969, the separate maintenance statute, has been rejected on appeal because the husband had not presented the issue before the trial court. *J.A.A. v. A.D.A.*, 581 S.W.2d 889, 899 (Mo. App.1979). Indeed, the United States Supreme Court, while declaring unconstitutional statutes that require a husband and not a wife to pay alimony, permits a holding that "contempt proceedings are too late in the process to challenge the constitutionality of a divorce decree already entered without constitutional objection." *Orr v. Orr*, 440 U.S. 268, 275 n.4, 99 S.Ct. 1102, 1109 n.4, 59 L.Ed.2d 306, 316 n.4 (1979). We are in accord with that bit of legal rubric.

Judgment affirmed.

DOWD, P. J., and SIMON, J., concur.