**Patricia K. SPANGLER, Respondent,**

v.

**Donald E. SPANGLER, Appellant.**

**No. WD 44494.**

Missouri Court of Appeals,
Western District.

May 5, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 30, 1992.

Patricia L. Hughes, Liberty, for respondent.

Before BERREY, P.J., and ULRICH and HANNA, JJ.

HANNA, Judge.

This case involves a contempt action brought by the ex-wife, Patricia Spangler (respondent) against her former husband, Donald Spangler (appellant) for non-payment of child support. The marriage of the parties was dissolved in February of 1972 in Jackson County, Missouri. Custody of the minor child was given to Patricia, and Donald was ordered to pay child support in the amount of $25.00 per week.

Donald made little or no child support payments from the date of the divorce until December, 1980, at which time the Clay County Prosecuting Attorney began an action on Patricia's behalf [1], under authority of § 207.025 RSMo, (repealed in 1982) [2]. Pursuant to that action, Donald agreed to a Voluntary Payment Agreement, where he was to pay $108.33 per month through the Clay County Circuit Clerk as trustee, instead of the $25.00 per week originally ordered. An order acknowledging the agreement was entered on the docket sheet in the Clay County proceeding.

Donald made his first payment to the Clay County trustee in November or December, 1980. Over the following years, several motions for contempt were filed by the Clay County Prosecuting Attorney in order to force payment. Eventually, in April of 1989, Donald filed a motion to modify the child support payments in the Clay County Circuit Court. Patricia filed a cross motion for an increase in child support and an action of contempt for failure to pay the arrearage she claimed were due

Linda L. Sherman, Harrisonville, for appellant.

1. Respondent's statement of facts suggests she first sought assistance from the Jackson County Prosecuting Attorney's Office, but was informed it couldn't help her because she could not provide it with appellant's address, place of employment, or social security number. She subsequently moved to Clay County in 1980.

2. Section 207.205 was repealed in 1982 and a similar set of statutory provisions were enacted as §§ 454.400 et seq. entitled Child Support, Enforcement By State. Also, Missouri amended the existing Chapter 454 by adopting the Uniform Reciprocal Enforcement of Support Act (entitled Uniform Reciprocal Enforcement of Support Law), §§ 454.010 to 454.360. Later, a Statewide Automated System for Child Support Enforcement was added to Chapter 454 as §§ 454.800 et seq. See also § 452.340 et seq., pertaining to child support obligations.

from 1972. In that action, the court indicated it would hold Donald in contempt for non-payment and impose a jail sentence. Donald responded by paying the sum of $750.31 into the court. Donald then contested the jurisdiction of the Clay County Circuit Court and on February 9, 1990, the court dismissed all pending matters for lack of jurisdiction.

Thereafter, Patricia filed a motion for contempt and motion to modify in Jackson County and a hearing was held on February 11, 1991. At the conclusion of Donald's case, the trial court found child support arrearage, together with interest thereon, had accumulated from February, 1972, until December, 1980, in the sum of $28,422.59. The trial court further found collection of the judgment was not barred under § 516.350 RSMo[3] and found Donald in contempt for failure to comply with his child support obligations as ordered by that court in 1972. Donald was ordered incarcerated until he made full payment of the arrearage, plus interest. He was eventually released on bond. This appeal followed.

▆▆▆ The first two points raised by appellant are interdependent and will be dealt with in a consolidated manner. Donald claims the payments due from 1972 through 1980 are presumed paid and collection is barred by § 516.350, as amended in 1982. In order to revive a judgment for periodic child support under the statute a payment must have been made "on the record thereof" within a ten year period. *Ivie v. Missouri Dept. of Social Services,* 793 S.W.2d 212, 215 (Mo.App.1990). Any payment made will revive the judgment for the amount of arrearage due for the ten years prior to the payment being made. *Id.* Since a payment was made to the Clay County court in November or December, 1980, the dispositive question depends on an interpretation of the language found in the statute and more specifically, whether a child support payment made through the Circuit Court of Clay County constitutes "payment on the record" of the support order originally issued from Jackson County in 1972. Section 516.350 is the applica-

ble statute as it should be applied to unpaid periodic child support payments due prior to August 31, 1982. *See Sparks v. Trantham,* 814 S.W.2d 621, 627 (Mo.App.1991).

▆▆▆ A "record" in simplest terms means "[a] written account of some act, court proceeding, transaction, or instrument, drawn up, under authority of law, by a proper officer, and designed to remain as a memorial or permanent evidence of the matters to which it relates." Black's Law Dictionary 1144 (5th ed. 1979). In legalese, the term "record" has several meanings, and includes the petition and subsequent pleadings, and generally "those matters which, by positive law, or by rule of practice, are made 'of record', and as such are self-preserving." *Caruthersville School Dist. v. Latshaw,* 360 Mo. 1211, 233 S.W.2d 6, 9 (1950) (*citing State ex rel. May Dept. Stores Co. v. Haid,* 327 Mo. 567, 38 S.W.2d 44, 45, 50 (1931)). As the term pertains to court proceedings, the "record" is a written memorial of all the acts and proceedings in an action or suit, in a court of record, and terminates when the judgment is rendered in the cause. Black's 1145 (5th ed. 1979). In circumstances involving the recordation of child support payments, an ongoing process which occurs post-judgment, the "record" would not be limited to the court proceeding, but would include any recordation by the clerk of the court for payments made on the judgment. This is further evident by § 452.345.3 (Supp.1992), where it is stated "[t]he circuit clerk shall maintain records listing the amount of payments, the date when the payments are required to be made, and the names and addresses of the parties affected by the order."

The uncontroverted facts are described above. An order was entered on the docket sheet of the Clay County court pursuant to the Voluntary Payment Agreement. The first payment was made in November or December, 1980, and duly recorded by the clerk into a computer file for the case. This payment was duly paid "on the

---

**3.** All statutory references are to RSMo, 1986, unless otherwise indicated.

record" in the Clay County Circuit Court as indicated by the computer printout.

■ The Clay County prosecutor initiated the enforcement action under § 207.-025, repealed in 1982, a procedure now covered by Chapter 454. The provisions of Chapter 454 apply where the obligor and obligee are in the same state, but different counties. *See In re Marriage of Stigall,* 756 S.W.2d 184, 187 (Mo.App.1988) and § 454.355. Any circuit court of this state has jurisdiction in proceedings to enforce support, regardless of whether that particular court issued the original divorce decree. *See Paul v. Paul,* 439 S.W.2d 746, 750, 752 (Mo. banc 1969) and § 454.110. Also, the prosecuting attorney has a duty to diligently prosecute cases for non-payment. §§ 454.180 and 454.420 (1992 Supp.). The only prerequisite to prosecution is the initiating court must acquire personal jurisdiction over the defendant, just as in any case.

Once the non-paying party is before a particular circuit court, that court has the power to issue a support order demanding payment of any arrearage. § 454.340. Pursuant to these orders, the court may require payments to be made directly to it as trustee, and has the duty to receive and disburse all payments made by the defendant in an enforcement action. § 454.260. *See also* § 452.345 and § 452.350.

■ Donald voluntarily agreed to make his child support payments to the Clay County court and the court issued an order accordingly. Once he submitted to jurisdiction in Clay County and made the first payment into that court in 1980, payment was made within the ten year period prescribed by § 516.350, and on the record of a circuit court having jurisdiction to enforce the support obligation. Where payments of child support are paid into any circuit court, of any county within the boundaries of this state, the payment is "paid on the record" as contemplated by § 516.350, regardless of what county issued the original divorce decree.

■ This holding is consistent with the purpose of Chapter 454 and the policy of this state concerning child support obligations. The purpose of the legislation surrounding Chapter 454 is to allow an obligee and the courts to more effectively and expeditiously enforce child support obligations. *See State ex rel. Osborne v. Goeke,* 806 S.W.2d 670, 671 (Mo. banc 1991); *Paul,* 439 S.W.2d at 749; and *Walker v. Walker,* 570 S.W.2d 339, 340 (Mo.App. 1978). The law mandates that counties of this state have a duty to cooperate with each other as well as the Division of Child Support Enforcement for enforcement of child support obligations. § 454.405.1 (1992 Supp.). The statutory provisions for enforcement of child support orders must be liberally construed to comply with the spirit or reason behind them, resolving all reasonable doubts in favor of the applicability of the law to a particular case. *See Olson v. Olson,* 534 S.W.2d 526, 529 (Mo. App.1976).

The payment made by Donald in 1980 effectively revived the judgment entered in February, 1972, pursuant to § 516.350, and all arrearage remain due as determined by the trial court. The court's calculation of the amount due is not disputed and the trial court's finding will not be disturbed. Therefore, the court's ruling that Donald owes $28,422.59 is hereby affirmed as ordered.

■ In his third point appellant claims the court erred by incarcerating him for civil contempt because of his failure to comply with the 1972 court order to pay child support.

Since *State ex rel. Stanhope v. Pratt,* 533 S.W.2d 567 (Mo. banc 1976) was decided, a person may be incarcerated for non-payment of child support obligations ordered under a divorce decree. *Id.* at 575. However, *Stanhope* was not to be applied retroactively. *Keltner v. Keltner,* 589 S.W.2d 235, 239 (Mo. banc 1979). The reasoning is, prior to *Stanhope,* a person could not be incarcerated for a monetary obligation, and legal counsel was given to that effect. *Id.* at 240. Persons entering into pre-*Stanhope* decrees lacked notice of the severe consequences of incarceration for non-payment.

An exception to the holding of *Keltner* was made for decrees which were ordered prior to 1976, but modified post-*Stanhope*. *See Giangreco v. Stanton*, 637 S.W.2d 749, 751 (Mo.App.1982), (where the parties entered into a Stipulation reducing the husband's maintenance payments, after the *Stanhope* decision had been handed down). The reasoning was that modification is not considered a mere adjunct to the original proceeding, but involves an adjudication of new rights, based on new evidence, resulting in a new judgment. *Id.* Although *Keltner* and *Giangreco* dealt with non-payment of maintenance, the same principles apply to child support obligations. *See State ex rel. Leong v. Smith*, 603 S.W.2d 74, 75 (Mo.App.1980).

The Jackson County court specifically stated the judgment of contempt was based on the 1972 order. Incarceration was not proper based on non-compliance of this pre-*Stanhope* order.

The 1980 order issued from Clay County appears to be a modification of the 1972 order since it changed the method or time of payment. However, it did not change the amount of payment. Because the record before us is sketchy, it does not sufficiently describe the circumstances surrounding the 1980 order, and therefore, we are unable to determine whether *Giangreco* is applicable. We cannot say whether the 1980 order was an adjudication of new rights to allow a successful prosecution for contempt of court.

Appellants' final three points are rendered moot by our ruling that the 1972 order will not allow an incarceration for contempt of court.

The judgment of the $28,422.59 arrearage is affirmed, the judgment of contempt and order for commitment are reversed, and the cause is remanded for further proceedings in accordance with this opinion.

All concur.