Martha (Everett) BURTON, Respondent,

v.

Thomas Lee EVERETT, Appellant.

No. WD 45539.

Missouri Court of Appeals,
Western District.

Jan. 26, 1993.

Michael W. Walker, Kansas City, for appellant.

Patricia L. Hughes, Hale, Kincaid, Waters & Allen, Liberty, for respondent.

Before BERREY, P.J., and ULRICH and SMART, JJ.

ULRICH, Judge.

Thomas L. Everett appeals from the June 5, 1991, order of the trial court finding him to be in civil contempt and finding him to be $63,730.29 in arrears in his child support obligation to his former wife, Martha F. (Everett) Burton. The order of the trial court is affirmed.

Mr. Everett raises five points that will be addressed on appeal.[1] Mr. Everett contends that the trial court erred (1) in concluding it had jurisdiction to hear and consider Ms. Burton's cross-motion for contempt; (2) in finding that none of the child support due was barred by the statute of limitations; (3) in finding that his child support obligation ceased on October 1, 1990, instead of June 30, 1990; (4) in finding Mr. Everett to be in civil contempt; and (5) in calculating the interest on the child support payments owed by Mr. Everett.

The marriage of Martha F. (Everett) Burton and Thomas L. Everett was dissolved by entry of decree in the Circuit Court of Clay County, Missouri on October 31, 1974. As part of the dissolution decree, the circuit court awarded custody of the four children of the marriage to Ms. Burton. Mr. Everett was ordered to pay to the Clay County Circuit Clerk, as trustee, $80.00 per week for the support of the children, starting on November 1, 1974.[2]

Mr. Everett paid no child support in the years 1974, 1975, 1977, 1978, 1979, 1986, and 1987, and paid $35 in 1976. In 1979, Ms. Burton filed a Uniform Reciprocal Enforcement of Support Act (URESA) collection action through the Clay County Prosecuting Attorney. In 1980, the Circuit Court of Arapahoe County, Colorado, the responding state in the URESA action, ordered Mr. Everett to pay child support in the amount of $150.00 per month plus $25.00 per month on the arrearage. In 1982, the Colorado circuit court ordered Mr. Everett to pay $58.00 per week in child support plus $32.00 per week on the arrearage. The Colorado court directed Mr. Everett to send all support payments to the Arapahoe County District Court Clerk and directed that clerk to forward the money to the Clay County Circuit Clerk.

On May 22, 1990, Mr. Everett, seeking to terminate his child support obligation, filed with the Clay County Circuit Court a "Motion to Modify Decree of Dissolution as to Child Support." As part of her answer to Mr. Everett's motion, Ms. Burton filed a "Cross–Motion for Contempt and for Determination of Child Support Arrearage." The answer and cross-motion were served on Mr. Everett by mailing copies of them to Mr. Everett's attorney. No show cause order was requested or issued, and Mr. Everett was not personally served. In his reply, Mr. Everett pleaded the affirmative defense of lack of jurisdiction for failure to properly serve the cross-motion on him.

A hearing was held in the matter on March 6, 1991. On June 5, 1991, the trial court entered an order finding Mr. Everett to be in arrears in his child support payments in the amount of $33,152.60 in principal plus $30,577.69 in interest, for a total arrearage of $63,730.29. The trial court found further that Mr. Everett failed to present adequate facts or persuasive evidence to excuse his noncompliance with the child support orders or to show that he had not willfully and intentionally disobeyed the court's orders. Accordingly, the trial court found Mr. Everett to be in civil contempt. Mr. Everett filed a "Motion for New Trial," which the trial court subsequently denied. On October 23, 1991, a "Warrant for Commitment" was entered by the trial court, and on January 31, 1992, a "First Amended Warrant for Commitment" was issued.[3]

1. A sixth point raised by Mr. Everett on appeal appears to be a restatement of his second point and will not be separately addressed.

2. Whether civil contempt imprisonment is legal for the willful refusal to comply with judgments requiring payment of child support which antedate March 8, 1976, and *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567 (Mo. banc 1976), is not an issue and is not considered in this case. *See Spangler v. Spangler*, 831 S.W.2d 256, 260–61 (Mo.App.1992).

3. Nothing in the record indicates that Mr. Everett was ever arrested or confined or had posted bond in connection with these warrants.

## I.

Mr. Everett contends as his first point on appeal the trial court lacked jurisdiction to hear Ms. Burton's cross-motion for contempt and, therefore, the trial court erred in finding him to be in civil contempt. Mr. Everett insists that Ms. Burton's service of the cross-motion on him by mailing a copy of it with her answer to his attorney was insufficient to confer jurisdiction on the trial court.

Persons charged with indirect contempt (contempt committed outside the presence of the court) are entitled to notice and reasonable time to defend against the contempt charge. § 476.130, RSMo 1986; *Jafarian–Kerman v. Jafarian–Kerman*, 424 S.W.2d 333, 341 (Mo.App.1967). The type of notice required is "a reasonable notice, one which will fairly and fully enable the party cited to know the specific acts he is charged with and be thereby enabled to prepare his [or her] defense." *Jafarian–Kerman*, 424 S.W.2d at 341 (quoting *G— v. Souder*, 305 S.W.2d 883, 886 (Mo.App.1957)). Merely showing that the alleged contemnor was in the court at the time of trial and had knowledge of what was going on is not sufficient to prove notice. *Jafarian–Kerman*, 424 S.W.2d at 341. Rather, the law contemplates a notice in writing, which fairly informs of the specific acts of contempt charged. *Id.*

The required notice may be provided in a motion for contempt. *See, e.g., Hopkins v. Hopkins*, 626 S.W.2d 389, 393–94 (Mo.App.1981) (where the appellate court noted that "the wife's motion [for contempt] provided the husband with adequate notice and made a prima facie case of contempt by reciting that he had an obligation to pay maintenance and had failed or refused to pay"). Ms. Burton's cross-motion for contempt and for determination of the child support arrearage provided sufficient written warning that an action for contempt would be addressed in the proceedings brought by Mr. Everett to modify the child support provision in the dissolution decree. The cross-motion specifically informed Mr. Everett of the acts alleged to be contumacious. The only question remaining is whether service on Mr. Everett's attorney provided Mr. Everett with the required notice.

Mr. Everett cites *Jafarian–Kerman* for the proposition that personal service of notice is required before a court can have jurisdiction in a contempt proceeding. *Jafarian–Kerman* involved a dissolution action where the mother had obtained a temporary order granting her custody and the father visitation privileges. *Id.* at 335. When the father failed to return the child to the mother after a scheduled visitation period, and the location of the father and the child were unknown to the mother, the mother filed a motion for contempt against the father. *Id.* at 335–36. The trial court issued a show cause order, but the order could not be served on the father because he had fled the country and had taken the child with him. *Id.* at 336. A hearing was subsequently held on the mother's petition for dissolution. *Id.* The father did not appear at the hearing, but his attorney did. While the father's counsel did not object to proceeding with the divorce action, he did object at the hearing to proceeding with the contempt action on the basis that "[t]he matter arose after [the father] left the country and no service, I am sure, has been had." *Id.* The trial court granted the dissolution action but overruled the mother's motion for contempt based on the lack of service of notice of the show cause order. *Id.* at 337. On appeal, this court upheld the actions of the trial court, noting that "[t]he great weight of authority sustains the action of the court in the case at bar in refusing to take further action on the order to show cause in the absence of any service of the same upon the defendant." *Id.* at 342.

The facts of *Jafarian–Kerman* are sufficiently different to render it inapposite to this case. In *Jafarian–Kerman*, the contempt proceedings against the father were initiated by the mother during a dissolution action brought by the mother. In the immediate case, the *motion for contempt* arose as a counterclaim in an action which Mr. Everett filed. In reply to Mr. Ever-

ett's motion to terminate, Ms. Burton asked the trial court to make a determination of the amount of child support arrearage and hold Mr. Everett in contempt for failure to pay the child support. Ms. Burton asserted her counterclaim in her responsive pleading, as required by Rule 55.27(a). Rule 43.01(b) and (c)(1) permitted Ms. Burton to serve the counterclaim on Mr. Everett by mailing a copy of it with her answer to Mr. Everett's attorney of record. Notice and service of Ms. Burton's counterclaim were proper and conferred jurisdiction on the trial court. The first point on appeal is denied.

## II.

■ As his second point on appeal, Mr. Everett alleges that the trial court erred in finding that no portion of the child support due was barred by the statute of limitations. Mr. Everett specifically disputes the trial court's finding that "the payment of child support made beginning in 1980 apply [sic] to the oldest unpaid balance beginning in 1975; that none of the payments now due are more than ten years old; and that none of the amount due is barred by the Statute of Limitations." However, Mr. Everett did not plead the statute of limitations as an affirmative defense in his reply to Ms. Burton's counterclaim. By not pleading the expiration of the statute of limitations, Mr. Everett waived the defense and is barred from asserting it on appeal. *Rincon v. Rincon*, 571 S.W.2d 475, 476 (Mo. App.1978); Rule 55.08.

■ Moreover, Mr. Everett's point is without merit. Under Section 516.350, RSMo 1986, periodic payments due as child support are presumed paid after ten years from the date the payment is due, unless "the judgment [awarding child support] has been otherwise revived." § 516.350.2. Subsection (1) of section 516.350 provides that judgments for periodic child support are revived by payments made on the judgment "duly entered upon the record there-

of." Any payment made will revive the judgment for the amount of arrearage due for the ten years prior to that payment being made. *Spangler v. Spangler*, 831 S.W.2d 256, 259 (Mo.App.1992).

■ Mr. Everett maintains that child support payments he made through a circuit clerk starting in 1980 are not payments "duly entered upon the record" within the meaning of section 516.350.1, RSMo 1986, and are therefore insufficient to revive the balance of payments due beginning in 1975. However, in *Spangler*, this court specifically found that the payment of child support to the circuit clerk as trustee constitutes payment "on the record" for purposes of section 516.350.1. *Id.* at 259–60. Mr. Everett's 1980 child support payments revived the arrearage due beginning in 1975. Point two is denied.

## III.

■ Mr. Everett contends as his third point on appeal that the trial court erred in finding that his child support obligation ceased on October 1, 1990, instead of June 30, 1990.[4] Mr. Everett claims that only one child remained unemancipated in 1990 and that child graduated in late May of 1990 with no intention of furthering her education. Mr. Everett insists that the trial court should have terminated his child support obligation on June 30, 1990.

Section 452.340, RSMo Supp.1992, provides that a parent's obligation to make child support payments ends when the child turns eighteen unless the court specifically finds that the child at age eighteen is enrolled in and attending a secondary school program of instruction, in which case the parent's support obligation continues until the child completes the program or reaches age twenty-one, whichever occurs first. §§ 452.340.3(5), .340.5. The youngest child of Mr. Everett and Ms. Burton, Lisa, turned eighteen on June 30, 1990.[5] Howev-

---

4. Mr. Everett states in his point relied on that his obligation should have ceased on June 1, 1990, but in the body of his argument asks the court to find his obligation ended on June 30, 1990.

5. Although the dissolution decree lists Lisa's birthday as June 3, 1972, in subsequent court documents and at trial both parties stated that her actual birth date was June 30, 1972.

er, Ms. Burton requested child support for Lisa until October 1, 1990, on the grounds that at the time Lisa turned eighteen she had not graduated from high school and was planning to finish. Ms. Burton testified that the date of termination should be October 1, 1990, instead of June 30, 1990, because "[Lisa] was in the hospital at that time, and during the time she was in the hospital she was going to school." Ms. Burton stipulated that October 1, 1990, is the date child support should terminate because Lisa was not enrolled in a high school program after that date.

The trial court found that "based upon the age of the children and the stipulations that none of the children attended school after October, 1990; that all child support obligations ceased effective retroactive to October 1st, 1990." Thus, the trial court found that Lisa was enrolled in and attending a secondary education program until October 1, 1990. Rule 73.01(a)(2); *Long v. Zirkle*, 811 S.W.2d 840, 844 (Mo.App.1991).

The decree of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Although Ms. Burton's testimony concerning the exact dates of Lisa's hospitalization and of her decision not to return to high school is confusing, her testimony does support the trial court's finding. Mr. Everett introduced no evidence to dispute her statements. As the trial court's finding is not against the weight of the evidence, point three is denied.

## IV.

As his fourth point on appeal, Mr. Everett asserts that the trial court erred in finding him in contempt because the trial court's order failed to set forth with particularity "what [he] did or did not do intentionally to support the conclusion that he was able to make the child support payments and that he placed himself in a position that he could not do so." It is Mr. Everett's position that the judgment of contempt lacks sufficient· facts to support it.

A judgment or order of commitment in a contempt proceeding which fails to recite the facts and circumstances which constitute the offense, but merely states legal conclusions, cannot stand. *Hunt v. Moreland*, 697 S.W.2d 326, 328 (Mo.App. 1985).

The trial court's order of June 5, 1991, makes the following findings:

7. The Court finds that [Mr. Everett] failed to make payments of support as ordered by this Court and in addition, failed to make payments of support as ordered by the Colorado Court; that [Mr. Everett's] failure to pay the support payments hereto mentioned was deliberate, intentional and willful in that he:

a) Has been and is financially able to make the required payments; and

b) Has intentionally and contumaciously placed himself in a position so that he could not comply with the Court Order; and

c) Has the present financial ability to satisfy the arrearage or can obtain the means by which the arrearage could be satisfied; and in this regard the Court specifically finds that [Mr. Everett] was duly served with a subpoena to produce his income tax returns, bank statements and financial records at court and failed and refused to do so.

8. The Court finds that [Mr. Everett] has failed to present adequate facts or persuasive evidence to excuse his noncompliance with said Order, to indicate compliance with the Court Order, or that he has not willfully and intentionally disobeyed this Court's Order.

The Court finds no facts presented by the evidence that indicate an intent by [Mr. Everett] to comply with either the Missouri or Colorado Court Orders, to excuse his failure to comply with said Orders or to show cause why he should not be held in contempt.

By evidence of the dissolution decree proving Mr. Everett's child support obligation and Mr. Everett's own admission that he regularly failed to make his re-

quired payments,[6] Ms. Burton established a prima facie case for contempt. *Hopkins*, 626 S.W.2d at 391–92. Mr. Everett then bore the burden of proving his inability to pay and that his noncompliance was not an act of contumacy. *Id.* Mr. Everett made little effort to carry his burden. Furthermore, as the trial court specifically noted in its findings, Mr. Everett actually obstructed Ms. Burton's efforts to prove his capability to pay and his contumacy in not paying by refusing to provide the income tax records, bank statements, and financial records requested in her subpoena. Mr. Everett's own actions inhibited the trial court's ability to provide more detailed findings of fact concerning his ability to pay. The handicap imposed upon the trial judge to more specifically articulate detailed findings regarding Mr. Everett's ability to pay resulted from Mr. Everett's defiant non-disclosure of his financial records and will not now serve to advance his contention. The fourth point on appeal is denied.

### V.

Mr. Everett claims as the fifth and final point on appeal that the trial court erred in its calculation of interest on his child support arrearage. However, Mr. Everett's main objection with the trial court's figures is that the court applied child support payments made beginning in 1980 to the oldest unpaid balance beginning in 1975, thus determining a higher amount of principal in arrears and a resulting increased amount of interest due.

As detailed in the discussion of Mr. Everett's second point on appeal, the trial court correctly found that none of the child support arrearage was barred by the statute of limitations. *See supra* section II. Ms. Burton was entitled to apply payments made starting in 1980 to the oldest debt due in order to avoid the running of the statute of limitations. *Anderson v. Stanley*, 753 S.W.2d 98, 100 (Mo.App.1988). As this appears to be the only dispute Mr. Everett has with the trial court's method of

determining interest on his arrearage, point five is denied.

The judgment of the trial court is affirmed.

All concur.

---

6. Mr. Everett admits in his brief to being at least $20,118.00 in principal and $15,897.45 in interest in arrearage on his child support obligation as of June 30, 1991.