Karl BOYER, Appellant,

v.

STATE of Missouri ex rel. Sherry STUERKE, Respondent.

No. WD 46551.

Missouri Court of Appeals, Western District.

May 4, 1993.

Carl E. Laurent, Independence, for appellant.

Jo–Ellen Horn, Independence, for respondent.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

PER CURIAM.

Karl Boyer appeals from a judgment of the circuit court affirming the decision of a hearing officer of the Division of Child Support Enforcement which held that Karl owes an arrearage of $14,096.44 in child support and that he must pay to the court trustee $450 per month—$150 toward the arrearage and $300 for current support. He also appeals the affirmance by the circuit court of an order issued by the Division of Child Support Enforcement to Karl's employer instructing the employer to withhold and pay over to the state $450 or 50% of Karl's monthly disposable income, whichever is less. Affirmed.

The marriage of Karl and Sherry Boyer was dissolved on December 27, 1976 in Jackson County, Missouri. Sherry was giv-en custody of the couple's two children. Karl was ordered to pay $150 per month per child in support. Sherry assigned her right to support to the Missouri Department of Social Services in 1979, 1983 and 1984.

Sherry and the children moved to California, where Sherry filed a petition for support under the Uniform Reciprocal Enforcement of Support Act (URESA)[1] on December 19, 1978. On February 22, 1979, a consent judgment was entered in the URESA action in the Circuit Court of Jackson County, Missouri. The judgment ordered Karl to pay $60 per month per child for support to the court trustee of Jackson County.

An affidavit of arrearage was filed on May 20, 1985 in which a deputy court administrator for Jackson County stated that Karl owed $16,785 in support to the court. No action was taken by either party on that affidavit. On February 3, 1986 a second deputy court administrator filed an affidavit of arrearage stating that Karl owed $2,600 in child support. On June 6, 1986 Karl paid $2,725 to the Department of Civil Records.

On December 18, 1989 the Director of the Division of Child Support Enforcement of the Department of Social Services entered an Administrative Order on an Existing Order pursuant to section 454.476[2]. The Department found that Karl was required to pay $150 per child per month under an existing support order, and that he was $17,096.44 in arrears. Karl was ordered to pay $450 per month to the state—$300 for current support and $150 toward the arrearage.

Karl requested and received a hearing before a hearing officer of the Division of Child Support Enforcement. The hearing officer found that the state's records were incomplete and inaccurate as to the amount of payments made by Karl. Karl's records were found to be the most accurate, complete and reliable, and the hearing officer used them in determining Karl's actual ar-

---

1. URESA is located at § 454.010 et seq. RSMo 1986.

2. All statutory references are to RSMo 1986 unless otherwise noted.

rearage to be $14,096.44. The portion of the order requiring Karl to pay $450 per month to the state was upheld. Karl appealed to the circuit court, which affirmed the decision of the hearing officer. Karl then undertook this appeal.

■ Karl makes four arguments on appeal. First, he argues that the court erred in affirming the finding that Karl's payment of $2,725 in response to a show cause order based on the affidavit of arrearage filed February 3, 1986 did not bring his account current. Karl claims he has made regular payments since that time, making any finding of arrearage arbitrary and capricious.

Karl fails to provide any authority for his position that the state is bound by the 1986 affidavit of arrearage. He also fails to explain why the state would be bound by one affidavit and not an earlier affidavit, which stated that Karl owed $16,785 in back support. Furthermore, it was apparent from Karl's own records, which he offered at the hearing before the hearing officer, that the 1986 affidavit of arrearage was grossly inaccurate.

Karl next claims that the court erred in finding that the consent judgment of February 22, 1979 did not modify the support order. The consent judgment was entered in the URESA action commenced by Sherry while she lived in California. Missouri was the responding state in this action.

Section 454.280 provides "[n]o order of support issued by a court of this state when acting as a responding state shall supersede any other order of support." The decision of the Division of Child Support Enforcement held that this statute contemplated separate and independent support duties under separate and independent orders, citing *Olson v. Olson*, 534 S.W.2d 526 (Mo.App.1976).

■ This case is controlled by *Morton v. Morton*, 798 S.W.2d 521 (Mo.App.1990), in which the court held that an award of child support in a URESA proceeding which differed from the amount in the original decree was not a modification of the original award. In *Morton*, the trial court denied the wife's motion to modify the original decree, stating that she had failed to prove changed circumstances from the date of a URESA judgment, which had ordered the husband to pay less child support than that contained in the decree. The court of appeals reversed, stating that participation in a URESA action did not confer upon the URESA court power to modify the decree. *Morton*, 798 S.W.2d at 523.

■ *In re Stigall*, 756 S.W.2d 184 (Mo.App.1988), cited by Karl as support for his position, is distinguishable from the case before us. There is no indication that Karl made a specific plea for modification at the URESA hearing. There is no evidence that Sherry had agreed to a modification of Karl's support obligation. Sherry was not personally present when the consent judgment was ordered. The fact that the prosecuting attorney was present is not enough to attribute acquiescence to a permanent modification to Sherry.

■ Karl's next point alleges that the court erred in rejecting Karl's contention that the state could not seek any payments due prior to December, 1979, because they were barred by section 516.350.

The hearing officer held that the payment on the court administrator's record on November 4, 1985 in case DR76–5216A, revived all payments owing for ten years previous to that payment. This position is supported by *Spangler v. Spangler*, 831 S.W.2d 256 (Mo.App.1992). The parties in *Spangler* were divorced in 1972 and the husband was ordered to pay child support. After the prosecuting attorney began an action to collect back support in 1980, the husband entered into a voluntary pay agreement and began to make payments to the court trustee that year.

The husband filed a motion to modify in 1989, and claimed that the payments due from 1972 through 1980 were presumed paid under section 516.350. The court of appeals disagreed, holding that the voluntary payments made to the court in 1980 revived all amounts due for ten years prior to that date. The court stated,

In circumstances involving the recordation of child support payments, an ongoing process which occurs post-judgment, the "record" would not be limited to the court proceeding, but would include any recordation by the clerk of the court for payments made on the judgment. This is further evident by § 452.345.3 (Supp. 1992), where it is stated "[t]he circuit clerk shall maintain records listing the amount of payments, the date when the payments are required to be made, and the names and addresses of the parties affected by the order." *Spangler*, 831 S.W.2d at 259.

The court concluded that when the husband agreed to voluntarily make payments to the court and began to do so, each payment made revived any payments due for up to ten years prior to the date of payment.

These facts fit squarely with the situation here. Karl agreed to make voluntary payments to the court trustee beginning March 8, 1979. Since that time he has made many payments to the court trustee, who kept records of these payments (though these have been shown to be somewhat inaccurate). In addition, he made a lump sum payment of $2,725 to the Department of Civil Records in June of 1986 in response to a show cause order. These payments to the court serve to revive all amounts due for ten years prior to each payment pursuant to section 516.350.

Karl's final point alleges that the administrative order was invalid because it failed to follow the guidelines required by 45 C.F.R. § 302.50(b). Karl cites an Eighth Circuit case, *Jackson v. Rapps*, 947 F.2d 332 (8th Cir.1991), to support his claim. In *Jackson*, the court ruled that, *when there is no court order that calculates the amount of support owed*, the amount of support obligation owed by an absent parent to the state must be determined "in accordance with a formula which meets the criteria prescribed in § 302.53." *Jackson*, 947 F.2d at 337. (emphasis added).

■ During the dissolution proceeding, the circuit court had determined the amount of support owed by Karl using the Missouri statutory guidelines, making *Jackson v. Rapps* inapplicable here. Karl argues that the administrative order of the Division of Family Services requiring him to pay $150 in addition to the $300 for current support in order to make up the arrears, without an inquiry into his ability to pay, violates 42 U.S.C. § 656(a)(2)(B) and 45 C.F.R. 302.53(a). We first note the 42 U.S.C. § 656(a)(2)(B) concerns support obligations where there is no order of support, and is inapplicable here.

■ The former federal regulation, 45 C.F.R. 302.53(a) [3], listed several factors to be considered when setting support obligations. 45 C.F.R. 302.53(c) provided that this formula "shall be utilized to determine the required monthly support obligations, the amount of support obligation arrearage, if any, and the amount to be paid periodically against such arrearage." [4]

The procedure for wage garnishment in child support cases is found at 45 C.F.R. 303.100. States are prohibited from withholding amounts greater than those contained in 15 U.S.C. § 1673(b). 45 C.F.R. 303.100(3).

The wage garnishment executed by the Division of Family Services ordered Karl's employer to withhold $450 per month from Karl's wages. If this amount exceeds 50% of Karl's "disposable income", the employer is to withhold the lesser amount. The federal statute, 15 U.S.C. § 1673(b), sets a limit on garnishment in support cases at 50% of the parent's disposable income when the obligated parent is supporting someone else, and 60% of his income when he is not. The circuit court did not err when it upheld the garnishment. The order of the Division of Family Services sets the garnishment at an amount lower than

---

**3.** This regulation was removed by Congress after briefing and argument in *Jackson v. Rapps* took place. Congress has also amended 45 C.F.R. 302.50 and revised 45 C.F.R. 302.56, which has taken the place of 45 C.F.R. 302.53.

**4.** Neither 45 C.F.R. 302.50 or 45 C.F.R. 302.56 as revised speak to the setting of schedules to eliminate arrearage.

the amount authorized by the 45 C.F.R. 303.100, and does not violate 45 C.F.R. 53.

The judgment of the circuit court is affirmed.

All concur.