James F. MARTIN, Appellant,

v.

Emma F. MARTIN, Respondent,

State of Missouri ex rel. Department of Social Services, Family Support Division, Respondent.

No. WD 72186.

Missouri Court of Appeals, Western District.

March 22, 2011.

J. Michael Murphy, Liberty, MO, for appellant.

Emma F. Martin, Respondent, pro se.

Jennifer O. Addadi, Kansas City, MO, for respondent State of Missouri, Department of Social Services.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JAMES E. WELSH, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

James Martin ("Father") appeals from the trial court's judgment which denied his request for an order reflecting satisfaction of his child support obligations. On appeal, Father maintains that the decree ordering him to pay periodic child support was not revived pursuant to section 516.350 (RSMo 1982).[1] Father thus maintains that as of July 1998, ten years after his final periodic child support payment was due, he was presumed by section 516.350 to have paid all of his periodic child support obligations, entitling him to an order reflecting satisfaction of the child support judgment. We disagree and affirm.

## Statement of Facts and Procedural History

On April 2, 1973, the Circuit Court of Jackson County, Missouri entered a divorce decree ("Decree") terminating the marriage of Father and Emma Martin ("Mother"). The parties had seven children. Pursuant to the Decree, Father was given custody of the eldest child. Custody of the six remaining children was awarded to Mother. Father was ordered to pay periodic child support in the amount of $44.00 per month for each of these six children. The Decree provided that the obligation to pay child support would continue "until further order of the court."

Each of the minor children was emancipated upon reaching the age of eighteen. The youngest child turned eighteen on July 26, 1988.

In June 1977, Mother began receiving financial assistance from the State of Missouri because Father was not making the periodic child support payments required by the Decree. Mother continued to receive financial support from the State until April 1988.

Father made twelve involuntary child support payments when income tax refunds he would otherwise have received were intercepted and transmitted to the State of Missouri, Division of Child Support Enforcement ("Division").[2] The twelve tax intercepts occurred at the following times: May 1987 ($681.84); May 1988 ($261.00); May 1990 ($229.83); May 1994 ($95.84); May 1996 ($102.00); August 2000 ($69.12); June 2001 ($884.00); October 2001 ($381.00); July 2002 ($224.89); June 2003 ($895.00); June 2004 ($1,563.00); and August 2008 ($1,200.00).

On February 23, 2009, Father filed an Application for Order of Satisfaction of

1. The parties agree that section 516.350 (RSMo 1982), which was in effect in July 1988 when Father's last periodic child support payment was due, controls. Thus, all references to section 516.350 in this Opinion are to section 516.350 (RSMo 1982) unless otherwise indicated.

2. Pursuant to the Governor's Executive Order 03–02, effective August 28, 2003, all powers of the Division of Child Support Enforcement created under Chapter 454 RSMo were transferred to the Department of Social Services, Family Support Division. All references to "Division" in this Opinion are meant to reference one or the other of these entities as the temporal context requires.

Judgment. Father generally alleged that he had paid his child support obligations. Father alternatively claimed that since his last child support payment was due in July 1988, his child support obligations were deemed paid ten years after that date in accordance to section 516.350 as the Decree had never been revived. Father took the position that the involuntary tax intercepts prior to 1999 did not revive the Decree because they were not "duly recorded on the record" in the manner required by section 516.350. The Division was joined as a necessary party to the proceedings initiated by Father's Application.

At trial, Father testified that he made several child support payments by money orders, but could not remember if these payments were given to Mother directly, or the exact amount of the payments. Other than Father's testimony, no evidence was presented by Father to support his claim that voluntary child support payments were remitted.

Mother testified that Father never made a voluntary child support payment following the entry of the Decree.[3] Mother stated that the only assistance she received to support the six minor children for whom she was awarded custody was from the State.

Greg Paszkiewicz ("Paszkiewicz"), who has stored the child support records for the Jackson County Circuit Court since 1986, testified that prior to 1999,[4] the Division, upon receipt of a tax intercept pay-ment, would immediately send electronic notice of the payment to the Jackson County Court Administrator. Upon receipt of such electronic notice, the Court Administrator would record the payment. Paszkiewicz identified records reflecting that this procedure had been followed with respect to the five tax intercepts received from Father's tax refunds between May 1987 and May 1996.

Emily Clark ("Clark"), who worked for the Division, testified about the manner of calculating Father's child support arrearage and the interest due and owing on the arrearage. Clark testified that Mother began receiving assistance from the State in December 1977. Clark confirmed the dates that the involuntary tax intercepts were both made and entered in Father's case. Clark testified that since the first involuntary payment in May 1987, there had not been a gap exceeding ten years in Father's payment history. Clark confirmed that before 1999, once tax intercepts were received by the Division, the circuit court would be electronically notified of the payment and the payment would be reflected in the court's file. Documentary evidence supporting the testimony of both Paszkiewicz and Clark was received in evidence.

On December 17, 2009, the trial court entered its judgment ("Judgment"). The trial court found that Father presented no credible evidence to support his claim that voluntary child support payments were re-

---

3.  Mother testified that she did receive one money order from Father following the divorce that "bounced."

4.  In 1999, the Family Support Payment Center was created in response to the adoption of section 454.530 (RSMo 1999) and section 454.536 (RSMo 1999), which replaced circuit clerks as record keepers of child support payments and created the Missouri Automated Child Support System. Correspondingly, sec-tion 516.350 (RSMo 1999) was modified to add subsection 3, which defined "payment duly entered on the record" to include the recording of any payment by the Division in the automated child support system created pursuant to chapter 454. Thus, there is no dispute in this case that tax intercepts from Father from and after 1999 were "duly recorded on the record."

mitted. The trial court found that Father owed child support in the principal amount of $10,444.98, plus interest thereon as of September 29, 2009, in the amount of $50,648.59. The trial court concluded as a matter of law that the tax intercept payments "made in May 1987, May 1988, May 1990, May 1994, May 1996, August 2000, June 2001, October 2001, July 2002, June 2003, June 2004 and August 2008 revived the periodic child support judgments due and owing between May 1977 and June 1988."

Father filed a motion for new trial which was denied. This timely appeal follows.

## Standard of Review

■■■ In court tried cases we will affirm the judgment of the trial court, "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "In our review, we are to afford the trial court deference concerning its determinations of credibility and are to view the evidence in the light most favorable to the trial court's decision." *Kerr v. Kerr*, 100 S.W.3d 912, 914 (Mo.App. W.D.2003). "The trial court's judgment must be affirmed under any reasonable theory that is supported by the evidence." *Id.*

## Analysis

■■■ In Father's sole point on appeal, he contends that the trial court erred by not entering an order reflecting that his periodic child support obligations described in the Decree were satisfied because there was no evidence to support a finding that the Decree had been revived pursuant to

section 516.350. Father does not contest the trial court's finding that he made no voluntary child support payments at any time after entry of the Decree in 1973.

Section 516.350 addresses judgments, orders, or decrees awarding periodic payments of child support or maintenance. Section 516.350.2 provides that "[i]n any judgment, order, or decree awarding child support ... each periodic payment shall be presumed paid and satisfied after the expiration of ten years from the date that periodic payment is due, unless the judgment has been otherwise revived as set out in [section 516.350.1]." Our Supreme Court held in *Ferguson v. Ferguson*, 636 S.W.2d 323, 324 (Mo. banc 1982) that pursuant to section 516.350.2, each periodic child support payment has a separate ten-year period of limitation.

In accordance with section 516.350.2, each time Father failed to make a monthly child support payment after entry of the Decree in April 1973, a ten year period of limitations for that particular payment obligation commenced. *Id.* Thus, the period of limitations for each unpaid monthly child support obligation began to expire in April 1983. Moreover, the period of limitations as to all of the periodic child support obligations expired as of July 1998, ten years after the final child support payment was due, *unless* the Decree was revived in accordance with section 516.350.1.

Pursuant to section 516.350.1, the obligation to remit periodic child support payments set forth in a judgment, order, or decree may be revived "upon personal service duly had upon the defendant or defendants therein," *or* upon a payment made on the judgment and "duly entered upon the record thereof."[5] Thus, the ten year period of limitations for each unpaid peri-

---

5. It is also possible to revive a judgment by seeking and obtaining a writ of *scire facias* pursuant to section 511.370 (RSMo 2000).

The Division does not argue that the Decree was revived in this manner.

odic child support obligation will begin anew if either means of revival occurs before the original ten year period of limitations has expired.

Applying these principles, the Division concedes that Father's periodic child support obligations from April 1973 through May 1977 are deemed paid by operation of section 516.350.2, as no effort to revive the Decree under section 516.350.1 occurred until May 1987, the time of the first tax intercept. Consistent with this concession, the Judgment does not include unpaid child support obligations accruing before June 1977.

The Division contends, however, that the twelve tax intercepts occurring from and after May 1987 each operated to activate a new ten year period of limitations for all periodic child support obligations owed by Father from and after June 1977. Father, on the other hand, takes the position that the five tax intercepts prior to 1999 were not "duly entered upon the record" of the court, and thus did not revive the Decree. Father argues that although the seven post–1999 tax intercepts were "duly entered on the record" pursuant to section 516.350.3 (RSMo 1999),[6] the post–1999 tax intercepts did not revive the Decree because they occurred after his periodic child support obligations were deemed satisfied in July 1998 pursuant to section 516.350.2.

The central issue in this case is, therefore, whether the five tax intercept payments from May 1987 through May 1996 were "duly entered on the record" in the manner required by section 516.350.1. If they were, then each operated to revive the Decree for all arrearages remaining

due within the ten year period preceding the payment, and each of the post–1999 tax intercept payments also revived the Decree for all arrearages remaining due within the ten year period preceding the payment.[7]

Our courts have recognized that "the recordation of child support payments, [is] an ongoing process which occurs post-judgment, [and] the [term] 'record' ... would include any recordation by the clerk of the court for payments made on the judgment." *Spangler v. Spangler,* 831 S.W.2d 256, 259 (Mo.App. W.D.1992). Father construes *Spangler* as a directive that only the clerk of the court can "duly record" payments on the record in the manner envisioned by section 516.350.1. We do not read *Spangler* so narrowly. Though we construed the phrase "duly entered on the record" to include recordation by the clerk of the court of payments made on a judgment, we did not hold that only the clerk of the court is empowered to "duly enter" payments on the record. *Id.* In fact, we observed in *Spangler* that the term "record" refers to "a written memorial of all the acts and proceedings in an action or suit, in a court of record," a description which is not limited to a sole record keeper. *Id.*

In the instant case, it is uncontested that the five pre–1999 tax intercepts were noted on the record by the Jackson County Circuit Court Administrator immediately following receipt of electronic notification of the tax intercept from the Division. We can envision no purpose that would be served by treating a notation of payment on the record by the Court Administrator

---

6. See footnote 4.

7. Father does not contest Clark's testimony that since the first involuntary payment in 1987, there has never been a gap in Father's payment history which exceeded ten years.

Thus, Father does not contest, assuming each of the tax intercepts lawfully revived the Decree, that the amount of his child support arrearage and interest due and owing thereon, would be calculated from June 1977.

as any less a "duly entered" recordation than a notation of payment on the record by a circuit clerk.

■ Father next argues that only payments actually paid into the circuit court can qualify as payments on a judgment, decree, or order under section 516.350.1. We disagree. Section 516.350.1 only requires entry of payment on the record, not physical payment into the court.

Father nonetheless relies on *State ex rel. Clatt v. Erickson*, 859 S.W.2d 239 (Mo. App. E.D.1993) for the proposition that payments not made directly to the circuit court clerk are not "duly entered on the record." Father's reliance on *Clatt* is misplaced. In *Clatt*, our Eastern District held that an affidavit prepared for, and used at, trial did not revive a judgment under section 516.350.1 as the affidavit was never recorded with the clerk of the court. *Id.* at 242. In *Clatt*, no evidence was offered to support a finding that payments of child support had been contemporaneously reflected on the record. "Duly" has been defined by our courts to mean, "[a]t the expected time; punctually." *Sparks v. Trantham*, 814 S.W.2d 621, 627 (Mo.App. S.D.1991) (finding that child support payments that were not recorded for more than eight years did not fit within the meaning of the word "duly") (citation omitted). In contrast in Father's case, though both Paszkiewicz and Clark testified from documents summarizing payments, each also confirmed the contemporaneous notation of the involuntary tax intercepts as payments on the court record. Thus, the evidence in this case supported the trial court's determination that the pre–1999 involuntary tax intercepts were "duly entered on the record."

*Spangler* is also of no assistance to Father. *Spangler* held that payments of child support paid into any circuit court will constitute a payment duly entered on the record. 831 S.W.2d at 260. However, *Spangler* did not hold that payments must be paid into a circuit court before the payment can be treated as "duly entered on the record."

The trial court in its finding of facts and conclusions of law held that all of the involuntary payments made by Father before 1999 were duly entered on the Jackson County Circuit Court's records, and that all involuntary payments recorded with the Family Payment Center after 1999 were duly entered on the record. The trial court's findings are supported by the weight of the evidence. The trial court determined as a matter of law that the tax intercept payments made between May 1987 and May 1996 revived the Decree pursuant to section 516.350.1. The trial court further determined as a matter of law that the post–1999 tax intercept payments each revived the Decree. The trial court's determinations did not erroneously declare or apply the law.

Father's point is denied.

## Conclusion

The Judgment of the trial court is affirmed.

All concur.